# Richmond

## NATHANIEL NOBLIN v. RANDOLPH CORPORATION, J. L. RARDEN, LESSEE, EMPLOYER, ET AL.

December 7, 1942.

Record No. 2636.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Allen & Allen,* for the appellant.

*John C. Goddin, William M. Tuck* and *John G. May, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

On December 25, 1940, while performing his duties as porter, Nathaniel Noblin lost an eye as the result of a kick administered by William H. Lawson, Jr., a guest of the John Randolph Hotel in South Boston. Notice of the injury was filed on January 10, 1941, with the Industrial Commission. As the parties were unable to agree on an award, a formal application was filed with the Industrial Commission and hearing was set for September 18, 1941. Before the hearing, Noblin, at the suggestion or request of his employer, instituted an action for personal injuries against Lawson and recovered a judgment in the sum of $2,000. Execution was issued on this judgment and returned, "No effects liable to levy."

The employer contended before the Commission that the judgment against Lawson constituted a bar to the claim for compensation under the Workmen's Compensation Act. This view was adopted by the Commission, and it entered an order dismissing the claim. From that order Noblin obtained this appeal.

The dominant question presented is whether an unsatisfied judgment obtained by an injured employee against a negligent third party constitutes a bar to compensation from the employer for the same injuries.

The answer to this question is found in the construction of the 1936 amendment to section 12 of the Workmen's Compensation Act. The General Assembly of Virginia has amended this section five times since 1918, when the act was originally adopted.

As first enacted, the section read: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise on account of such injury, loss of service or death."

The provisions of this section, construed with the entire act, define the relations existing between an employee and an employer. The relations of an employee to other parties are not mentioned. The employee is denied the right to proceed against the employer, when the relation of master and servant exists, to recover damages for an accidental injury in any forum other than the Industrial Commission. Under this section, an employee, who happened to be injured by the negligence of a third party while in and about the master's business, could claim compensation from his employer and also proceed in a common law action for the recovery of full damages from such third party. In such an event, an employee could obtain a double recovery for the same injuries.

This section was amended in 1920 for the purpose of eliminating the possibility of such double recovery. This amendment retained all of section 12 as it was originally enacted and added three new paragraphs. The first new paragraph provided that the mere making of a lawful claim against an employer constituted an assignment *pro tanto* of the amount of liability created on the employer by the act. All excess, over and above the stated amount of liability, remained the property of the injured employee. The statute expressly directed the employer to hold such excess, when recovered by him, for the benefit of the injured employee or

his beneficiaries named in the act. The second new paragraph conferred upon an insurance carrier, who complied with certain conditions, the same rights and liabilities given an employer. The third new paragraph dealt with matters not germane to the question now under consideration.

The 1924 amendment made substantial changes in this section. Many of these changes were retained in the 1930 and 1932 amendments. However, the 1936 amendment, which is now in force, re-enacted the same provisions found in the 1920 amendment without substantial change. For this reason, the construction heretofore placed on the 1920 amendment by this court is vital to the determination of the question.

In *Smith* v. *Virginia Ry., etc., Co.*, 144 Va. 169, 176, 131 S. E. 440, the facts were that one Stratton, while performing a mission for the Virginia Railway and Power Company, was injured through the negligence of one Smith. Stratton, as an employee of the Virginia Railway and Power Company, was paid compensation under the Workmen's Compensation Act. Later, he instituted an action at law against Smith. More than a year after the date of injury Smith claimed that Stratton was barred from maintaining the action against him because he elected to accept an award from his employer. Thereupon Stratton offered to amend his declaration by stating that the action was brought in his name for the benefit of the Virginia Railway and Power Company. This amendment to the pleading was allowed and was the basis of one of the errors assigned. Speaking to the point, Judge Prentis said: "The contention is that Stratton could not maintain the action because of the first clause of section twelve of the act, hereinbefore quoted. That clause, however, refers only to the remedy of an employee against his employer, and it is only his right to sue his employer for damages which is barred by the acceptance of compensation under the act. No argument to support this conclusion is necessary, as it seems to us, because he who runs may read it in the statute.

"The next clause of the section quoted refers to an entirely different right, and subrogates the employer who has paid

compensation to his employee under the act to the right to enforce any legal liability against such other party as may be liable in damages for the injury. The employer is not only subrogated to any such right of the employee to enforce any such legal liability against another, but the statute in express terms provides that he may enforce it 'in his own name or in the name of the injured employee, or his personal representative.' "

The opinion quotes the following from *Thomas* v. *Otis Elevator Co.*, 103 Neb. 401, 172 N. W. 53: " 'The first complaint made is that the plaintiff had no right to bring the action in his own name under section 3659, Rev. St. 1913. In *Muncaster* v. *Graham Ice Cream Co.* (103 Neb. 379, 172 N. W. 52) it was decided that the statute did not take away the right of the employee to recover damages against a third person when the relation of master and servant does not exist; that the section was designed for the protection of an employer who has paid the compensation; that, if the employer's rights were protected, it was no concern of the negligent third party.' "

The opinion then continues: "The statute subrogating the employer to the rights of the employee was not enacted for the benefit of the negligent third party; he has slight interest in it. He remains liable for the entire amount of such damages as may be lawfully recovered of him. The most that he could possibly claim is that after judgment he would be interested in having the proper apportionment made between the employer who has paid the compensation and the employee, if the recovery against him should exceed the amount paid to such employee under the compensation act. So, in this case, it was not necessary to amend the notice of motion. Every interest which the defendant had would have been fully protected by endorsing the writ or the declaration with the statement that the action of Stratton was for the benefit of the Virginia Railway and Power Company, as its interests might be shown. That this is the common and approved practice in this State is shown by several cases. * * * .

"The amendment which the court allowed, while not necessary, may have been appropriate. It was only because the defendant directed attention to the statute, and that the Virginia Railway and Power Company had been thereby subrogated to the rights of the plaintiff to the extent of the compensation which it had paid him, that the amendment was allowed. This was not the institution of a new action and was germane. It follows from this that the plea of the statute of limitations was properly rejected."

Again this court, speaking through Judge Holt, in *Chesapeake, etc., Ry. Co.* v. *Palmer*, 149 Va. 560, 140 S. E. 831, quoted at length from the *Smith case, supra,* and, in addition, said: "Into the construction of every act must be read the purpose of the legislature, and that underlying purpose in this instance was to give relief to workmen. This relief in the nature of things had to be charged against the employer. Section 12 in the original act of 1918 (Acts 1918, c. 400) consisted only of what is now the first paragraph of that section as amended by the Acts of 1920. It said that an employee who had received compensation under this act from his employer should not thereafter sue him—a declaration manifestly just.

"It soon became apparent that an employer might be mulcted in compensation who was no wise at fault. The right of the employee to sue the wrongdoer had not been affected, and it was then possible for him to duplicate his recovery and to secure damages from two sources. Such a situation called for relief, it was given in the amendment in 1920, and written into the second paragraph of section 12. It gave to the employer the right to recover from the wrongdoer whatever he had actually had to pay, and it took from the employee the right *pro tanto* to a double recovery, *but beyond this it left the employee's right to recover as it was before.*" (Italics supplied.) See *Southern R. Co.* v. *United States Cas. Co.*, 136 Va. 475, 118 S. E. 266; *Humphrees* v. *Boxley Bros. Co.*, 146 Va. 91, 135 S. E. 890, 46 A. L. R. 1427.

Section 12 of the act, as it stood in 1920, was construed by this court to mean that in the event an employee had been

injured by the negligence of a third party and had accepted compensation, then either the employer or the employee had a right to maintain an action against such party for the full amount of the damages sustained. The employer was limited in his recovery to the amount that he had paid or was liable to pay under the act, and the employee entitled to all in excess thereof. As Judge Holt said: "It gave to the employer the right to recover from the wrongdoer whatever he had actually had to pay, and it took from the employee the right *pro tanto* to a double recovery, but beyond this it left the employee's right to recover as it was before" the 1920 amendment.

The 1924 amendment was adopted before the opinions in the *Smith* and *Palmer cases* were published. The pertinent change in the statute was couched in this language: "* * * provided, however, that where such employee, his personal representative or other person may have a right to recover damages for such injury, loss of service or death from any person or persons other than such employer, he may institute an action at law against such third person or persons before an award is made under this act and prosecute the same to its final determination, *but either the acceptance of an award hereunder, or the procurement of a judgment in an action at law, shall be a bar to proceeding further with the alternate remedy;* * * *." (Italics supplied.)

This provision was first construed in *Horsman* v. *Richmond, F., etc., R. Co.*, 155 Va. 934, 157 S. E. 158. The facts were that Horsman, an employee of the Fruit Growers Express Company, while in the scope and course of his employment, was injured by the alleged negligence of the railway company. He accepted compensation from his employer and then instituted an action at law to recover damages for personal injuries sustained by the alleged negligence of the third party. The defendant, in a special plea, alleged that the injured employee had accepted compensation from his employer and that that fact, under subsection 12 of the Workmen's Compensation Act as amended in 1924, barred him from maintaining the action. Thereupon the plaintiff offered

to amend his declaration by stating that the action was instituted in his name for the benefit of the Fruit Growers' Express Company and the insurance carrier. This was the procedure followed and approved in the *Smith case.* However, the trial court rejected the plaintiff's offer to amend the declaration and sustained defendant's plea.

This court, speaking through Mr. Justice Browning, said: "The plaintiff, to sustain his contention that the said ruling of the court was erroneous, cited a number of cases from other states, but appeared to rely chiefly upon the case of *Smith* v. *Virginia Ry., etc., Co.,* 144 Va. 169, 131 S. E. 440, 442. The decision of the court in that case was based upon the statute as it then existed. It was controlled by the provisions of section 12 of the Workmen's Compensation Act then in force and effect (Acts of 1920, page 256, chapter 176). We have no criticism of the decision. It was patently sound and founded in good reason, but this statute was amended by the Acts of 1924, chapter 318, * * * ."

After quoting the act, the opinion continues: "It will thus be seen that the law is essentially different from what it was when the *Smith* v. *Virginia Railway & Power Co., supra,* case was decided."

The provisions of the 1924 amendment were involved in the case of *Williamson* v. *Wellman,* 156 Va. 417, 429, 158 S. E. 777, where we said: "In view of the construction of the act prior to the amendment and the amendment, this court in deciding the *Horsman Case* applied the well-known principle that where there is an inconsistent and irreconcilable provision in a statute it should be construed so as to give effect to the latest expression of the legislative intent. The new provision in the 1924 amendment shows an evident intent on the part of the legislature to include within its terms a negligent third party.

"In the *Horsman Case* it is settled that the amendment bars an injured employee, or his personal representative, from proceeding against a third party liable for an injury after he has accepted an award.

"It would be unjust to allow an employer or an insurance carrier to recover from a third party more than such employer or carrier is liable to pay the injured employee, or to permit such employer or carrier to collect from such third party and deny the injured employee the right to compel payment of any surplus so received."

The opinions in the *Horsman* and *Williamson cases* clearly reveal that the 1924 amendment to the statute was not just to an employee who had sustained injuries by the negligent act of a party other than the employer. At the first meeting of the General Assembly (1932) after these decisions were published, it eliminated, in part, this injustice by adding an additional paragraph to the section. This amendment gave to the injured employee the full amount of any recovery against the third party, less the amount of compensation paid or payable and other expenses allowed the employer or insurance carrier under the act. However, this amendment retained that part of the act adopted in 1924 which compelled the employee to elect whether he would bring an action at law against the tort feasor or claim compensation under the act.

In *Virginia Elec., etc., Co.* v. *Mitchell,* 159 Va. 855, 868, 164 S. E. 800, 167 S. E. 424, we said: "Subsection 12 of section 1887 of the Code (Workmen's Compensation Act), prior to the 1932 amendment (chapter 279), as construed in *Horsman* v. *Richmond, F., etc., R. Co.,* 155 Va. 934, 157 S. E. 158; *Williamson* v. *Wellman,* 156 Va. 417, 158 S. E. 777; and *Tyler Corp.* v. *Evans,* 156 Va. 576, 159 S. E. 393, provided that when an employee, injured by the negligent act of a party other than the employer, elected to accept an award under the act, he was forever barred from any recovery from the tort feasor. The acceptance of the award constituted an assignment of the right of action to his employer or the insurance carrier. If in such action, instituted for the benefit of the employer, or carrier, against the tort feasor, the amount of damage suffered by the injured employee and allowed by the jury exceeded the sum the employer was required by the act to pay the employee, he (the employer, or carrier)

is permitted reimbursement for reasonable expenses and attorney's fees incurred. * * * . *Horsman* v. *R., F. & P. R. Co., supra; Tyler Corp.* v. *Evans, supra;* and *N. & W. Ry. Co.* v. *Faris,* 156 Va. 205, 157 S. E. 819, held that the injured employee, when he has elected to accept compensation under this act, is limited to the amount fixed thereby. The case of *Williamson* v. *Wellman, supra,* limited the amount the employer might recover to the sums paid, or which he was liable to pay, the injured employee, plus reasonable expenses and attorney's fee, if incurred. * * * .

"It is useless to discuss the matter further, for by the 1932 amendment to the act it seems that in such actions instituted by or for the benefit of an employer or carrier, the injured employee, or his personal representative, is entitled to 'the full amount of any recovery against a third (negligent) party less the amount of compensation paid or payable and other expenses provided for in this act,' and, to that extent at least, the legislature intended to modify the decisions in the cases cited." See *Norfolk, etc., Ry. Co.* v. *White,* 158 Va. 243, 163 S. E. 530; *Solomon* v. *Call,* 159 Va. 625, 166 S. E. 467; *Corrigan* v. *Stormont,* 160 Va. 727, 170 S. E. 16; *United States Fidelity, etc., Co.* v. *Blue Diamond Coal Co.,* 161 Va. 373, 170 S. E. 728.

While the 1932 amendment stated that no provision of the section should be construed to prevent the injured employee or his personal representative "from receiving the full amount" of any recovery, with certain deductions, the statute retained that provision requiring the employee to elect whether he would institute an action against the negligent third party or claim compensation from his employer, expressly declaring that an acceptance of an award or the procurement of a judgment would constitute a bar to proceeding further with the alternate remedy. These provisions of the statute, literally construed, gave to the employee the excess recoverable from a third party but denied him the opportunity of enforcing his rights against the third party if he had accepted an award. Confining our attention to the statute alone, the employee, so far as the excess over and

above the award was concerned, was at the mercy of the employer, or the insurance carrier, who might or might not institute an action against the third party—that is, the statute gave the employee a right to the excess but denied him a remedy to enforce the right against the party liable. If the same insurance company has sold compensation insurance to the employer and has sold a liability insurance policy to the third party liable for injuries to the employee, it would not be to its advantage to pay compensation under one policy and bring an action against the third party for whose negligence it was liable under the other policy.

This was the status of the statute, as construed by this court, when the General Assembly, in 1936, decided to repeal all amendments to section 12 adopted after 1920 and to re-enact the 1920 amendment with an addition hereinafter quoted. It is significant to note that the part of the 1924 amendment, which compelled an injured employee to elect whether he would proceed in an action at law against the third party, or proceed with his claim for compensation against his employer, was not included in the 1920 amendment. This provision, which was controlling in that line of cases beginning with *Horsman* v. *Richmond, F., etc., R. Co., supra,* undoubtedly was omitted purposely. This last amendment restored the law to the exact status that it was when the decisions in the *Smith* and *Palmer cases* were rendered. The construction of a statute by a court of last resort becomes a component part of the statute. Where a repealed statute, previously construed by the courts, is re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature and becomes obligatory upon the courts. *Kelly* v. *Trehy,* 133 Va. 160, 112 S. E. 757.

In the cases construing the 1920 amendment to section 12, it was held that the acceptance of an award from the Industrial Commission was not a bar to a claim by the injured employee against the negligent third party. It follows that the converse of that proposition is equally true—that the

procurement of a judgment which is unsatisfied is not a bar to the prosecution of a claim against the employer. The employer has no right of action against the third party, who is liable for injuries to the employee, unless such a right is expressly given him by statute. This the 1920 amendment does, but only to the extent stated in the statute. Under the common law the injured employee has a right to maintain an action against any negligent tort feasor unless this right is expressly or by necessary inference denied him by statute. The statute assigns to the employer so much of the recovery against the third party as he is compelled to pay to the injured employee. The statute is not designed to relieve a negligent third party from any liability for damages he has inflicted. It divides the damages in just proportions between the employer who has paid and the employee who has been injured. This seems fair and equitable to all parties concerned.

The new paragraph incorporated in the 1936 amendment reads: "In any such action by such employee, his personal representative or other person against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of expenses for medical, surgical and hospital attention and supplies, and funeral expenses, incurred by the employer under the provisions of this act, and in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such expenses of the employer so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor."

This paragraph clearly contemplates that the injured employee, after accepting certain benefits from the employer under the Workmen's Compensation Act, may institute an action against a negligent third party. However, in such action, it permits or authorizes the employer, who has paid the stated benefits, to join in the action for the purpose of recovering the amount he has already paid to his employee or his beneficiary for injuries resulting from the same accident.

■ ■ The section is so worded that it gives to the injured employee an opportunity to obtain one full recovery but prohibits him from receiving a double recovery for his injuries. The right of the injured employee to pursue his action at law against the negligent third party is not prohibited. However, in the exercise of that common law right, he must not prejudice the right of subrogation given to the employer. This the present employee has not done. It appears that the employer advised the employee to institute the action against Lawson, aided the employee in the selection of counsel, and, with full knowledge of all the facts, assisted in obtaining the $2,000 judgment. He cannot now plead such judgment, the result of his own instigation, in bar of his liability under the Workmen's Compensation Act.

■ The interests of the parties in the outcome of the common-law action, the simplicity of the proceeding before the Industrial Commission, and the defenses available in a tort action render it advisable for the injured employee to pursue his remedy under the Workmen's Compensation Act before obtaining a judgment at law. However, if the statutory right of subrogation is not impaired by reversing the procedure suggested, there is no reason to hold a judgment procured in the common-law action a bar to the claim for compensation.

The last question presented is whether the employee is entitled to compensation for total incapacity under section 30 of the Workmen's Compensation Act or only for the specific loss of one eye under section 32.

The pertinent facts are that the employee, a negro 39 years old, lost the sight of one eye in early childhood and lost the sight of the other eye in the accident involved in this case. He contends that total blindness is the equivalent of total permanent incapacity. The Industrial Commission has decided this question adversely to the contention of the employee in several cases. Among the more recent decisions is *Stapleton* v. *United Collieries, et als.*, decided September 9, 1942.

A determination of the question involves the construction of section 32, paragraph (1), subsections (p) and (r), and section 34, as follows:

"Sec. 32. (1) In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be as specified therein, and shall be in lieu of all other compensation, to-wit:

\* \* \* \* \* \* \*

"(p) For the permanent total loss of the vision of an eye, fifty-five per centum of the average weekly wages during one hundred weeks; and for the permanent partial loss of the vision of an eye, the percentage of one hundred weeks equivalent to the percentage of the vision so permanently lost.

\* \* \* \* \* \* \*

"(r) The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, in the same accident, shall constitute total and permanent incapacity, to be compensated according to the provisions of section thirty."

"Sec. 34. If an employee has a permanent disability or has sustained a permanent injury in service in the army or navy of the United States or in another employment other than that in which he received a subsequent permanent injury by accident, such as specified in section thirty-two, he shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the earlier disability or injury had not existed."

The injuries scheduled in section 32 are compensated for a definite time, and the compensation benefits provided therein are in lieu of other compensation. This section is clearly an exception to sections 30 and 31, which cover total and partial incapacity. The benefits under the latter sections are predicated upon the incapacity to work produced by the accident. The benefits provided by section 32 are based upon the loss, or loss of use of the members scheduled therein, irrespective of the future incapacity to work which may have

resulted from the loss, or loss of use, of such member or members as are covered in the various schedules.

Section 32 was construed in *Gobble* v. *Clinch Valley Lumber Co.*, 141 Va. 303, 310, 127 S. E. 175, where Judge Burks quoted with approval from the opinion in *Jones* v. *Georgia Cas. Co.*, 30 Ga. App. 207, 117 S. E. 467, as follows: " 'It (section 32) deals exclusively with partial disabilities; not only so, but its scope is limited to partial disabilities resulting from injuries of a certain, definite, and particularly described character, to-wit, injuries to particular members or organs of the body. Section 30 provides for temporary and permanent total disability. Section 31 provides for temporary or permanent partial disability on account of any and all injuries to the person "except as otherwise provided" in section 32. By its express terms section 31 omits to provide for partial disabilities occasioned by permanent injuries to the particular members scheduled by the succeeding section. Finally, section 32 provides for permanent partial disability on account of the particular injuries expressly excepted from the operation of the preceding section. Section 32 is the only section which provides, and it provides exclusively, for partial disabilities occasioned by permanent injuries of the particular character therein set forth; neither this section nor the preceding section in any wise purports to deal with the subject of total disabilities. These are dealt with by section 30, exclusively. It thus appears that, construing the three sections together, upon an injury being received entailing total disability, the employee is entitled to receive compensation therefor under the provisions of section 30; that where such total disability is succeeded by partial disability, he is entitled to recover additional compensation therefor, either under section 31 or section 32—under section 31 on account of all injuries except of the particular kind and character scheduled in section 32, but exclusively under section 32 if the partial disability is permanent and is occasioned by an injury of the character therein described.

" 'If such additional compensation for permanent partial disability is recovered under section 32 for the "loss" or "par-

tial loss" of a member therein designated, no additional compensation can be had for partial disability under section 31, but the remedy prescribed therefor by section 32 is exclusive.' "

The *Gobble case* was decided March 19, 1925. Section 32, paragraph (1), subsection (r), was amended in 1930 (Acts 1930, p. 60, ch. 54), as follows: "The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, in the same accident, shall constitute total and permanent incapacity, to be compensated according to the provisions of section thirty."

[██ ██] The change consisted in adding the words, "in the same accident." This amendment makes it clear that the loss of both eyes must result from the same accident as a condition precedent to entering an award for total and permanent incapacity. It is reasonably clear from the terms of this amendment that the legislature did not intend that the loss of sight should be construed to mean a total and permanent incapacity unless the sight of both eyes was lost in the same accident. This conclusion is further fortified by the general language found in section 34, providing that a claimant "shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the earlier disability or injury had not existed." Any other conclusion would render the employer liable for loss of vision in one eye in some other employment or in a non-occupational accident. The pertinent provisions of the statutes clearly reveal that the legislature intended to hold the employer liable only for the amount of injury sustained by the employee in the conduct of his particular business.

The numerous authorities cited in the briefs from other jurisdictions decide the two questions involved for and against the contention of the employee. However, those decisions are based upon the diversified language of the controlling statutes. See Workmen's Compensation Statutes by Schneider. For this reason we have confined our citations to the pertinent authorities in this jurisdiction.

The total amount to which the employee is entitled under the Workmen's Compensation Act is $1,100. This sum is the result of multiplying 55% of his average weekly wage, which is ascertained to be $20, by 100 weeks, the period for which the statute allows compensation for the loss of the vision of one eye.

It is, therefore, apparent that the employee, in prosecuting his common law action against Lawson to a judgment in the sum of $2,000, did not prejudice the insurance carrier's statutory right of subrogation. However, the carrier is not entitled to exercise the right of subrogation until he "shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor." To date the carrier has not complied with either of these conditions. If and when the employer or the carrier has complied with the conditions stated in the statute, the right of subrogation may be enforced by a proper proceeding in the Circuit Court of Halifax county, where the judgment was obtained.

For the reasons stated, the order of the Commission is reversed, and the case is remanded for the entry of an award in accordance with the views herein expressed.

*Reversed and remanded.*