# Richmond

GEORGE STONE v. GEORGE W. HELME COMPANY AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.

March 4, 1946.

Record No. 3058.

Present, All the Justices.

The opinion states the case.

*John D. Easley*, for the appellant.

*Caskie, Frost & Watts*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

The question for decision is whether an employee who is injured in the course of his employment, and, without the knowledge and consent of his employer or the employer's insurer, makes a valid settlement with a third party against whom he has a claim for damages for his injury, and executes a full and complete release to the latter, is thereby debarred

from compensation under the Workmen's Compensation Act. (Michie's Code of 1942, secs. 1887 (1) *et seq.*, Acts 1918, ch. 400, p. 637, as amended.)

The Industrial Commission held that such act of the employee barred his right to compensation, and to review that decision the present appeal has been allowed.

The evidence is practically without conflict. It shows that on December 20, 1944, George Stone, a colored man, an employee of George W. Helme Company. while unloading tobacco from a truck at Lynchburg, Virginia, in the course of his employment, stepped through a hole in the floor of the truck, causing what the employer's physician at first thought was only a slight injury to the leg. It later developed that the employee had also sustained a ventral hernia.

On December 21, the employer completed its report of the accident and sent it to the insurance carrier, the American Mutual Liability Insurance Company, who in turn forwarded it to the Industrial Commission where it was received on December 26. On January 30, 1945, the insurance carrier denied liability for compensation on the grounds, (1) that it did not appear that the hernia had "immediately followed" the accident, as is required by section 2, (e) of the Act, as amended (Michie's Code of 1942, section 1887 (2), (e) ), and (2) that the disability due to the leg injury did not exceed the waiting period of seven days. (Section 29 of the Act, as amended; Michie's Code of 1942, section 1887 (29).)

On January 31 the Industrial Commission wrote Stone that his claim for compensation would be contested and furnished him a form upon which to make application for a hearing. Application for the hearing was filed on February 14, and the matter was heard on May 16.

It developed that Stone had, in fact, sustained a hernia which was compensable under the Act. But it was also shown that the truck on which Stone was working at the time of his injury was owned by the Vance Trucking Company which had promptly notified the American Fidelity &

Casualty Company of Richmond, its liability insurance carrier, of the accident. This latter insurance company had referred the matter for investigation and adjustment to Ellis M. Bristow, its adjuster in Lynchburg, who had gotten in touch with Stone on January 17. After talking to Stone and ascertaining how the accident occurred, Bristow had concluded, to use his own words, "that it was a compensation case," and so told Stone. In the meantime, Stone had sought compensation from his employer and had been told that it was a matter to be adjusted by the latter's insurance carrier which then had it under consideration.

Stone called to see Bristow several times and wanted to know what adjustment would be made of his claim. Finally, on January 31, Stone offered to settle for the sum of $150. Bristow explained to Stone that if this amount was paid to and accepted by him it would relieve both the Vance Trucking Company and George W. Helme Company of any further liability to him (Stone). At that time this appeared to be entirely satisfactory to Stone, who replied that "he would take the money and go back to Martinsville, where he came from." The amount agreed upon was paid by Bristow to Stone who executed a full release, under seal, of all of his claims against the Vance Trucking Company. Bristow testified that before the money was paid and the release executed, he read the release to Stone, fully explained the situation to him, and that Stone said "he understood it thoroughly."

It is clear from the evidence that neither the employer nor its insurance carrier had any part in the settlement or knew anything about it until some time after it had been effected.

On February 7, Stone returned to Bristow and asked for and was refused an additional sum of money. He was told that so far as the Vance Trucking Company was concerned the matter was closed. For the first time, Stone then consulted counsel who wrote Bristow, on February 7, disavowing the settlement on the ground that it had ben made by Stone while ignorant of his rights. The letter offered to

return the amount of $150 which Stone had received, or else credit it on any claim which he might have against the Vance Trucking Company. But there the matter ended. The money was not returned nor was any step taken to set aside the settlement and release.

At the time of his injury Stone received an average weekly wage of $32.60, and hence the amount which he received from Bristow was slightly below the aggregate amount of his wages for five weeks. Just what he would have been entitled to under the compensation statute does not appear from the record. The opinion of the hearing commissioner states that the benefits under the Act would have exceeded the sum of $150.

There is no claim that Bristow misrepresented to Stone the latter's rights. But Stone testified that he could neither read nor write, that at the time of the settlement he did not fully comprehend his rights, and did not understand the purport of the release which he executed. On the contrary, as has been said, Bristow stated that he fully explained the transaction to Stone, that the latter said that he understood it, and apparently did. This conflict the hearing commissioner and the full Commission have resolved in favor of Bristow, and such finding Stone admits in his brief is binding on us. Indeed, the petition for a writ of error concedes that "the release is binding upon petitioner."

The question then is, Does this settlement which the injured employee has voluntarily made with a third party, possibly responsible for his injury, and which the employee concedes is valid and binding upon him, bar his claim to compensation under the Act? The precise question has not been previously presented to this court. It turns upon a proper interpretation of section 12 of the Workmen's Compensation Act, as amended by Acts 1936, ch. 369, p. 591 (Michie's Code of 1942, section 1887(12)), which is copied in the margin.[1]

---

[1] "Section 12. The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act respectively to pay and accept compensation on account of personal injury or

In *Noblin* v. *Randolph Corp.*, 180 Va. 345, 23 S. E. (2d) 209, we reviewed the history of this section and pointed out (180 Va., at page 357, 23 S. E. (2d), at page 214) that the effect of the 1936 amendment was to restore that portion of the section now under consideration to its status as effected by the 1920 amendment (Acts 1920, ch. 176, p. 256). We also pointed out (180 Va., at page 357, 23 S. E. (2d), at page 214) that while under the present statute (Acts 1936, ch. 369, p. 591) the injured employee is no longer required to elect whether he shall accept an award of compensation from the employer, or procure a judgment in an action at law against the negligent third party, as required by the 1924 amendment (Acts 1924, ch. 318, p. 478), yet the employee is not entitled to a double recovery, that is, from both the employer and the negligent third party, for his injuries (180 Va., at page 359, 23 S. E. (2d), at page 214).

It will be observed that the second paragraph of the section provides that an employer against whom a claim for

death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise on account of such injury, loss of service or death.

"'The making of a lawful claim against an employer for compensation under this act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages, but any amount collected by the employer under the provisions of this section in excess of the amount paid by the employer or for which he is liable shall be held by the employer for the benefit of the injured employee or other person entitled thereto, less such amounts as are paid by the employer for reasonable expenses and attorney's fees. Provided, that no compromise settlement shall be made by the employer or insurance carrier in the exercise of such right of subrogation without the approval of the Industrial Commission and the injured employee or the personal representative or dependents of the deceased employee being first had and obtained.

"Where any employer is insured against liability for compensation with

compensation has been made "shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party."

Under the third paragraph of the section the insurance carrier who pays or assumes liability for compensation is subrogated to the rights of the employer against the third party.

In the *Noblin Case* (180 Va., at page 359, 23 S. E. (2d), at page 214) we held that in pursuing his right against the negligent third party, the injured employee "must not prejudice the right of subrogation given to the employer" under this section.

Neither must the insurance carrier's "statutory right of subrogation" be prejudiced by the act of the employee, in order to preserve the latter's right to compensation.

In the *Noblin Case* we concluded that the procurement by the employe of an uncollectible judgment against the negligent third party had not prejudiced either the employer's or insurance carrier's right of subrogation, and that

any insurance carrier, and such insurance carrier shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor, it shall be subrogated to all the rights and duties of the employer, and may enforce any such rights in its own name or in the name of the injured employee or his or her personal representative; provided, however, nothing herein shall be construed as conferring upon insurance carriers any other or further rights than those existing in the employer at the time of the injury to his employee, anything in the policy of insurance to the contrary notwithstanding.

"In any such action by such employee, his personal representative or other person against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of expenses for medical, surgical and hospital attention and supplies, and funeral expenses, incurred by the employer under the provisions of this act, and in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such expenses of the employer so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

"Nothing in this act contained shall be construed to make, for the purposes of this act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."

upon payment of compensation the carrier could still enforce its right of subrogation against the judgment debtor in a proper proceeding. Hence we held that the employee's right to compensation was not barred. (180 Va., at page 363, 23 S. E. (2d), at page 216.)

But the inference from the *Noblin Case* is clear that if the employer's or the insurance carrier's statutory right of subrogation is impaired by the act of the employee, the latter's right to compensation is thereby barred.

In the case before us that is precisely what has happened. Should the employer, or its insurance carrier, pay compensation to the injured employee, under the statute it would be entitled to subrogation to the rights of the employee against the Vance Trucking Company. But should the employer, or its insurance carrier, then proceed against the Vance Trucking Company, it would be met with a valid and binding settlement and release which would be a complete bar to such a suit. In other words, the employer, or its carrier, would find the statutory right of subrogation to have been destroyed by the voluntary act of the employee.

We cannot agree with the argument of the employee that under the *Noblin Case* an employee is no longer required to make an election. That case holds, as we have said, that the employee under the present statute is not required to make the same election which was exacted of him under the 1924 amendment, namely, that he elect either to accept compensation, or prosecute to a final judgment in an action at law his claim against the negligent third party. But he still must elect whether he will accept compensation or effect a full settlement with the third party. He cannot do both. This would be tantamount to a double recovery, which the *Noblin Case* points out is no longer permissible under the Act.

The argument is made that since no compensation has actually been paid to the employee, neither the employer nor the insurance carrier has acquired any right of subrogation which has been prejudiced by the act of the employee. This argument is not sound. The right of subrogation here

does not depend upon equitable principles which require actual payment before the right accrues. It is purely statutory and arises when the conditions specified in the statute are met. *Reidy* v. *Old Colony Gas Co.*, 315 Mass. 631, 53 N. E. (2d) 707, 709.

It is true that the employer's right to enforce its right of subrogation has not yet accrued. Under the statute this right accrues upon "the making of a lawful claim against an employer for compensation." But when such claim is made "the employer's rights, as assignee of the employee, relate back and are the same as those of the employee at the time of the injury." *Southern Ry. Co.* v. *United States Cas. Co.*, 136 Va. 475, 483, 118 S. E. 266.

This statutory right of subrogation to which the employer was entitled, as well as that in favor of the insurance carrier upon its payment or assumption of liability for compensation, the employee has completely destroyed by his own voluntary act.

It is, argued that since the record here does not affirmatively show that the injured employee actually had a valid claim against the Vance Trucking Company, it has not been proven that either the employer or the insurance carrier has been prejudiced by the settlement and the release. ▉ But the record does show that the injured employee made a claim against the Vance Trucking Company, in satisfaction of which he was paid and accepted the sum of $150, and in consideration of which he executed a full and complete release of all of his claims against that company. This was a *prima facie* showing that the claim made was valid, and cast upon the employee the burden of bringing forward evidence to show that he had had no legal claim against the party with whom the settlement had been made. This burden the employee has not sustained. Indeed, the point was not even raised in the tribunal below.

While the workmen's compensation acts of the various States have provisions dealing with the rights of an injured employee against a negligent third party causing the injury, and the rights of the employer and employee *inter sese* aris-

ing out of this situation, there is a remarkable lack of uniformity in the terms of the statutes. Some of the statutes provide that the employee must elect to proceed either against the employer for compensation or against the negligent third party for damages. Other statutes permit the injured employee to proceed against both parties at the same time. Some of the acts require the approval of the industrial commission in order for the employee to effect a valid settlement with the third party. Some statutes prohibit a settlement between the employee and the third party for a sum less than the compensation benefits. Generally, these latter statutes require the injured employee to credit on the compensation payments the amount which he may have received from the third party.

The decisions interpreting these statutes, so different in purport and effect from ours, are of little aid to us in our present inquiry.[2]

The Indiana statute, while different in phraseology, is of a similar purport to ours. There the injured employee has the "option" either to claim compensation from the employer, or to proceed at law against the negligent third party to recover damages for his injuries. While he may proceed against both at the same time, "he shall not collect from both." If compensation is awarded and accepted under the act, the employer who pays compensation, or has become liable therefor, may collect in his own name, or in the name of the injured employee, or, in case of death, in the name of his dependents, "from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee or his dependents." (Sec. 40-1213, Burns' Ind. Statutes 1933, 1940 Replacement, Sec. 16389, Baldwin's Ind. Statutes 1934.)

That statute was recently before the court in *Bebout* v.

---

[2] For a discussion of the subject and collection of cases, see Schneider's Workmen's Compensation Laws, Perm. Ed., Vol. 3, section 838, p. 199 *ff*; Injury and Death under Workmen's Compensation Laws (Horovitz), p. 339 *ff*; Annotations in 19 A. L. R. 766; 27 A. L. R. 493; 37 A. L. R. 838; 67 A. L. R. 249; 88 A. L. R. 665; 106 A. L. R. 1040.

*Mendez & Co.*, 110 Ind. App. 28, 37 N. E. (2d) 690, which involved a situation quite similar to that with which we are confronted. There an employee, in the course of his employment, was injured by reason of the negligence of a third party, with whom he effected a settlement at the sum of $1150, and to whom he gave a complete release exonerating him from further liability. About nine months after this settlement the employee died as a result of the injuries received in the accident, and his widow and dependents filed a claim for compensation. It was held that immediately following the accident the injured employee was given the right to claim compensation from his employer, under the provisions of the Workmen's Compensation Act, and also the right to proceed at law against the tort-feasor, the third party, to recover damages which the employee had suffered as a result of the injury; that having elected to pursue his remedy at law, and having effected a complete settlement with the tort-feasor for all injuries sustained in the accident, the employee "had no further cause of action against the wrongdoer, and he had no further claim against his employer which he could assert"; and that having thus destroyed the employer's right of subrogation, the employee's right to claim compensation was barred during his lifetime, and so were the rights of his widow and dependents.

While the opinion in that case does not say so, we may assume that the cash settlement of $1150 which the employee made with the tort-feasor was far below the amount to which his dependents would have been entitled under the compensation act.

It will be recalled in this connection that we have frequently held that the decisions of the highest court of Indiana, in interpreting the workmen's compensation statute of that State, are highly persuasive with us. See *Harris* v. *Diamond Const. Co.*, *ante*, p. 711, 36 S. E. (2d) 573, and cases there cited.

Among other cases holding that the act of an injured employee in effecting a voluntary settlement with and execut-

ing a release of the third party bars a claim to compensation, under statutes like ours, are *Hart* v. *Traders, etc., Ins. Co.* (Tex.), 189 S. W. (2d) 493; *White* v. *New Mexico Highway Comm.*, 42 N. M. 626, 83 P. (2d) 457; *Tews* v. *Hanks Coal Co.*, 267 Mich. 466, 255 N. W. 227.

Finally, the contention is made that the employer here is estopped by its conduct to deny the compensation claim. The argument is that the employer and insurance carrier, in denying the compensation claim, compelled the employee to seek reimbursement for his damages from the Vance Trucking Company, and, therefore, are not in a position to say now that they were liable for compensation with the right of recovery over against the Vance Trucking Company.

There might have been some merit in this contention had the evidence showed that the injured employee was misled to his prejudice by the conduct of the employer or its insurance carrier. But such is not the case. The record clearly shows, as has been stated, that the employee here effected a settlement with the Vance Trucking Company before he had learned what disposition would be made of his compensation claim.

Moreover, as has been pointed out, neither the employer nor its insurance carrier in any way induced the employee to make the settlement with Vance Trucking Company. Compare the situation in the *Noblin Case*, where the employer aided and induced the injured employee to proceed against the insolvent tort-feasor and was thereby estopped to deny the compensation claim.

We find no error in the award and the same is

*Affirmed.*