16013

## TAYLOR v. MOUNT VERNON-WOODBERRY MILLS, INC.

(45 S. E. (2d) 809)

*Messrs. McKay & McKay,* of Columbia, for Appellant,

*Mr. Henry H. Edens,* of Columbia, for Respondent,

November 25, 1947.

FISHBURNE, J.: The question for determination is whether an employee who is injured in the course of his employment, and, without the knowledge and consent of his employer, a self-insurer, makes a binding settlement with a third party against whom he has a claim for damages for his injury, and executes a full and complete release to the latter, is thereby debarred from compensation under the Workmen's Compensation Act. Sec. 7035-11, 1942 Code.

The exceptions also present issues, whether the claimant, Noah Taylor, was an employee of appellant, Mount Vernon-Woodberry Mills, Inc., at the time he received his injuries, and whether the accident giving rise thereto arose out of and in the course of employment. The affirmative of these issues will be assumed, because our disposition of the first question stated will make it unnecessary to pass upon them.

The Industrial Commission held that a voluntary settlement and release entered into between the employee and

the third person tort feasor without litigation of any nature, did not bar the employee's right to compensation. Upon exceptions taken to the circuit court, this finding of the Commission was upheld and affirmed. The present appeal is from that judgment.

The relevant facts bearing upon the issue under discussion are not in conflict.

On the night of October 18, 1943, the respondent was riding in an automobile owned and driven by a co-employee, on their way to work at the mill of the appellant in the city of Columbia. While en route, at some point on Gervais Street, they collided with another automobile operated and occupied by James E. Webb, Jr., and Elizabeth Williams. As a result of the collision, the plaintiff's right leg was broken about four inches above the knee. He was taken to a local hospital, where he remained thirty days, and was incapacitated for his usual work for seven months.

On the 26th day of November, 1943, after his discharge from the hospital and while he was at his home, he entered into a voluntary settlement with the third parties for a valuable consideration, giving to them a release which completely discharged and absolved them from all liability growing out of the accident. This release was executed without the knowledge or consent of the Mount Vernon-Woodberry Mills, and before the plaintiff had filed any claim against it for workman's compensation benefits.

The respondent received from the insurer of the third parties in settlement of his claim the sum of $1,330.00, which was applied as follows: $920.00 cash to him, $250.00 hospital bill, and $160.00 for medical bills.

The release provided that in consideration of the payments above mentioned, the respondent discharged the third parties "and all other firms, persons, or corporations from all claims, damages, demands, actions, or causes of action on account of * * * bodily injuries * * * and of and for all

claims or demands whatsoever in law or in equity which I * * * can, shall, or may have by reason of any matter, cause or thing whatsoever prior to the date hereof. It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected."

Thereafter, on June 12, 1944, the respondent filed his claim with the Industrial Commission, which, after taking testimony, ordered that the appellant pay to him temporary total disability compensation from October 18, 1943, at the compensable rate of $18.78 per week, until he should be discharged by his physician as being able to return to his former employment or work of similar nature. And it concluded, as a matter of law, that it was premature to determine the extent of permanent disabilities sustained by the claimant as well as disfigurement compensation to which he may be entitled, until the maximum healing period had been reached. The Commission in its award also ordered that the appellant was entitled to have credited against the amount of the award the sum of $1,330.00 paid by the third parties to the claimant under the settlement and release here in above referred to. It may be noted in passing that our Act, Sec. 7035-11, contains no requirement or authority for such credit. It is silent upon the subject.

It is not disputed that the release executed by the respondent to the third parties completely exonerated them from all liability. The appellant contends that by settling with the third parties and giving them a full release the claimant elected to proceed at common law, and having collected from the third parties cannot now collect from the appellant under the Workmen's Compensation Act. And further that by giving such full release before making demand for compensation benefits, and without appellant's knowledge or consent, he has destroyed appellant's right of subrogation against the third parties under the Workmen's Compensation Act, and is estopped to demand benefits under such Act.

The question then is: Does this settlement which the injured employee voluntarily made with the third party tortfeasor responsible for his injury, and which the claimant concedes is valid and binding upon him, debar him from compensation under the Act?

The precise question has not previously been presented to this court. It depends upon a proper determination of the pertinent provisions of the Workmen's Compensation Act, Sec. 7035-11.

After providing that the rights and remedies therein granted shall exclude all other rights and remedies of an employee, his personal representatives, parents, dependents and next of kin, as against the employer at common law, subsection 11 of the Act proceeds as follows:

"When such employee, his personal representative or other person may have a right to recover damages for such injury, loss of service, or death from any person other than such employer, he may institute an action at law against such third person or persons before an award is made under this article, and prosecute the same to its final determination; but either the acceptance of an award hereunder, or the procurement and collection of a judgment in an action at law, shall be a bar to proceeding further with the alternate remedy. * * *

"The acceptance of an award under this article against an employer for compensation for the injury or death of an employee shall operate as an assignment to the employer of any right to recover damages which the insured employee or his personal representative or other person may have against any other party for such injury or death; and such employer shall be subrogated to any such right, and may enforce, in his own name or in the name of the injured employee or his personal representative the legal liability of such other party. If the injured employee, his personal representative or other person entitled so to do, has made a claim under this article against his employer, and has not

proceeded against such other party, the employer may, in order to prevent the loss of his rights by the passage of time, institute such action prior to the making of an award hereunder. * * *"

Other provisions of this section give subrogation rights to any insurance carrier which may have paid compensation for which the employer is liable or shall have assumed the liability of the employer therefor.

We held in *Fuller et al. v. Southern Electric Service Co.*, 200 S. C. 246, 20 S. E. (2d) 707, 710:

"The first provision restricts the employee, his personal representative, or other person, to recovery by one of the alternate remedies. If he has a right to recover damages from any person other than the employer, he may institute an action at law before an award is made and may prosecute his suit to its final determination; but if he procures a judgment in the action at law he is barred of his remedy for an award under the Workmen's Compensation Law, and if he accepts an award he is barred of his remedy in the action at law. He may recover by one of the alternate remedies, but not by both. * * *"

Subsection II of Section 7035 of our Workmen's Compensation Act is entitled: "Employee cannot get relief from employer hereunder and third person—relief from one bars alternate remedy * * *."

The particular wording which we are called upon to construe is:

"* * * he may institute an action at law against such third person or persons before an award is made under this article and prosecute the same to its final determination; but either the acceptance of an award hereunder, *or the procurement and collection of a judgment in such an action at law, shall be a bar to proceeding further with the alternate remedy.*" (Emphasis added.)

The question is whether the voluntary settlement and release given by the claimant was tantamount under this ar-

ticle to the procurement and collection of a judgment in an action at law. And in this connection we must consider the effect of the release upon the statutory right of subrogation to which the employer was entitled.

Giving effect to the plain purpose and import of the foregoing language, we think that the employee made his election. To rule otherwise would be to render completely nugatory the subrogation feature of the Act, which was inserted for the benefit of the employer, and give countenance to an obvious evasion of the statute. The employee did not procure or collect a judgment in an action at law, but he "collected" in the sense of the quoted provision, and his right to collect compensation from the employer was thereby extinguished. We are constrained to hold that this article does not empower an injured employee to circumvent the plain intent of the law and thus exclude the employer from all recourse upon the third party tort-feasor. Having obtained relief from the third party, he cannot pursue the alternate remedy.

The Workmen's Compensation Act was adopted, as we have stated in many cases, to protect industrial workers against the hazards of their employment and to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents. We have held that the Act should be liberally construed in order to carry into effect its beneficent purposes. But this does not mean that we should do violence to the statute in order to aid either party. The provisions of subsection 11 were designed to relieve the employer from this burden in cases where the injuries are caused by the fault of other persons and the injured employee obtains redress from them.

The provisions against the collection of both damages and compensation, and subrogating the employer to the rights of the employee in the event compensation is awarded, were enacted for the benefit of the employer, as an integral part of the scheme of compensation. *Walters v. Eagle Indemnity Co.,* 166 Tenn. 383, 61 S. W. (2d) 666, 88. A. L. R. 654.

In *Walters v. Eagle Indemnity Co., supra,* it was held that the word "collect," as used in a provision of the Compensation Act, whenever an injury was sustained under circumstances creating in some person other than the employer a legal liability, the employee might, at his option, either claim compensation, or proceed at law against such other person to recover damages, or proceed against both the employer and such other person, but. that he should not be entitled to "collect" from both, imported an act of payment without reference to the legal grounds on which payment might be demanded. And it was further held that payment of a substantial sum to an injured employee by a third person charged with liability for the injury, in consideration of the employee's covenant not to sue, extinguished the employee's right to demand compensation for the injury from his employer, regardless of whether the third person was actually liable.

It is contended by the respondent that in order to give effect to such rule, it must be made to appear in the suit for compensation that the person from whom damages were collected was in fact legally liable to pay damages for the injury. But it seems to us very evident that if such a burden was placed upon the employer—pleading the collection of damages in bar of the right to compensation—to prove the negligence of the third person, he would be met by both participants in the accident contending that there was in fact no negligence, and the statutory provision would be of little benefit. A confusion of issues would result which an equitable construction of subsection 11 does not sanction or warrant. In any event, the fact of payment by the third party creates a *prima facie* showing of liability. This reasoning was clearly stated and upheld in *Stone v. George W. Helme Co.,* 184 Va. 1051, 37 S. E. (2d) 70.

The position is taken by respondent that since no compensation has actually been paid to the employee, the employer, as self-insurer, has acquired no right of subrogation which has been prejudiced by the act of the

employee. This argument is not valid. The right of subrogation under our Act does not depend upon equitable principles which require actual payment before the right accrues. As was held in *Reidy v. Old Colony Gas Co.,* 315 Mass. 631, 53 N. E. (2d) 707, it is purely statutory and arises when the conditions specified are met.

A fair and equitable construction of our statute is ■ that if the employer's or the insurance carrier's statutory right of subrogation is destroyed by the act of the employee, the latter's right to compensation is thereby barred. In the case before us, that is precisely what has happened. Should the appellant pay compensation to the injured employee, under the Act it would be entitled to subrogation to the rights of the respondent against the third parties whom he released from liability. But should the appellant employer then proceed against such third parties, it would be met with a valid and binding release which would be a complete bar to such a suit. In other words, the employer would find the statutory right to subrogation to have been destroyed by the voluntary act of the employee.

It is stated in the record that the amount paid by the third parties to the respondent was a fair and proper settlement under the circumstances. There is no showing or contention that any fraud was practiced upon him, or that he was misled in any manner.

The Workmen's Compensation Acts of Virginia and Tennessee, while somewhat different in phraseology from ours, are of similar import, and in the cases we have cited from these states, the courts reached the same conclusion that we have reached in this case. For related cases see Annotations 106 A. L. R. 1040, 88 A. L. R. 665.

The circuit court in its order ruled that the claimant could not waive his rights under the Act because of the provision contained in Section 7035-24, which reads: "No agreement by an employee to waive his rights to compensation under this Article shall be valid".

The Article referred to, of which the above quotation is the last paragraph, exempts compensation benefits from tax and creditor's claims, and prohibits the assignment of such benefits, or agreements by employees to share the expenses of workmen's compensation costs. The quoted paragraph refers to compensation under this article, but even if it refers to the Act, such a provision, if applied here, would relate solely to rights existing between employer and employee. The claimant in his dealings with a third party is a free agent and the agreement he made with the third parties exonerating them from liability had the effect under Sec. 7035-11 of an exercise of his option to pursue his alternate remedy against such third parties. As such, it operated as a bar to the alternate remedy against the employer.

Judgment reversed.

BAKER, CJ., and TAYLOR and OXNER, JJ., concur.

STUKES, J. (dissenting):

I am constrained to disagree with the majority disposition of this appeal. I think it applies a construction of an at least doubtful provision of the compensation act which excludes the injured employee from the protection of the law in conflict with our previous decisions which accord with the general rule, that this remedial law should be construed by resolving doubts so as to include employees rather than exclude them from the benefits. More will be later said upon this point.

The compensation act created a new right in the employee and is a part of his contract of employment. Code Sec. 7035-6; *Brown v. Town of Patrick,* 202 S. C. 236, 24 S. E. (2d) 365. For the purpose of the present problem it may be likened to accident insurance. An employee with such a policy collects under it for his accident without effect upon his right to workmen's compensation. His employer is not subrogated to his rights against the insurance company. How then does subrogation arise against a third person who is liable to the

injured employee *in tort,* instead of on contract as in the case of the supposed insurer of the employee against accident?

The answer is the statute. The court cannot go afield of it without encroaching upon the sphere of the legislature, and that, I am afraid, is what is proposed to be done here. The act says with explicit plainness what conditions shall bar such an injured employee from his right to compensation—"procurement and collection of a judgment in an action at law". Compromise settlement of a questionable claim is far from that. Instead of applying the plain words of the statute, it seems to me that it is proposed to apply a sort of parallel to the common law rule of election of remedies or follow the doctrine of equitable estoppel. I think neither has any place in this adjudication of claimant's rights under the compensation act.

It is axiomatic that our duty is to administer our law as it stands, not as perhaps it should be or as the laws of other states are. *Dawson v. Southern Railway Co.,* 196 S. C. 34, 11 S. E. (2d) 453, 454, is authority for the application of our Workmen's Compensation Act as it is written, and not in accord with the decisions of the courts of other states construing corresponding, but not identical, provisions of the compensation laws of their states. The following is the concluding paragraph of the opinion: "The appellant cites and relies on decisions by the Court of Appeals of Virginia, which sustain its contention; and the respondent cites in support of its argument an opinion of the Supreme Court of North Carolina. The citations from the Courts of both of these States deal with the Workmen's Compensation Act of those States, which are in close analogy with ours, and the citations are interesting. However, as we have said in other cases, we prefer to construe our own Act, where its provisions, in our judgment, are plain and unambiguous". It was held in that decision that the personal representative of a deceased employee could not, after accepting an award of workmen's compensation, sue a third person tort-feasor for damages under Lord Campbell's Act, in the absence of the consent of the

employer. It was a literal application of the terms of the act as it then stood; the court declined to undertake to construe the act in the manner that it may have been thought it should have been written. Incidentally, the result of the *Dawson case* (which was followed in *Davis v. Fleming,* 196 S. C. 343, 13 S. E. (2d) 434) appears to have inspired the passage of Act No. 527 of 1941, 42 Stat. 1314, whereby it was enacted that should the subrogee of the injured employee's right of action against the third person fail to bring suit thereupon after notice, the employee or his representative may do so. The provisions of the 1941 Act, just cited, appear as sections 7035-12 and 7035-13 of the 1942 Code. Similarly in this instance I see no room for "construction" of the Act before us; its terms are too plain. If the result of the application of it is not in accord with the legislative intent, the legislature should follow the course (not open to the court) of amendment of the act as it apparently did as a consequence of the decisions in the *Dawson* and *Davis cases, supra.* It might be said with at least some degree of accuracy that literal application of the terms of the compensation law served to oust employees injured by third persons from the law courts in the cited cases, and now the act will be *interpreted* to bar a similarly injured employee from the benefits of workmen's compensation.

Not only do I think the latter stated result inconsistent with our earlier cited cases but, if it be granted that the answer to the present question is doubtful, it is violative of the apparently universal rule that doubts of the meaning of the provisions of the compensation law should be resolved in favor of claimants; the law should be construed so as to include workmen within its benefits rather than exclude them. There are many decisions of this court to that effect. See cases digested in 34 S. E. Dig. 2-582 *et seq.,* Workmen's Compensation, Key No. 51, 52.

It is respectfully suggested that the judgment of the majority rests upon the faulty premise that claimant has destroyed the employer's statutory right to subrogation by his volun-

tary settlement with the third person tort-feasor. First it should be repeated parenthetically that the decision under review provides for credit of the whole amount collected by the employee upon the compensation award, so the employer is receiving full benefit of the settlement and it is not shown that it will suffer any financial loss. But is the effect of the voluntary settlement and release that all right of recovery by the employer against the tort-feasor, by way of subrogation, has been extinguished? That, I think, is a difficult question which perhaps is unnecessary to decision of the present appeal because the explicit language of the act controls. But the majority opinion decides it—I think erroneously. The tort-feasor and his liability insurer had notice (constructive, at least) at the time of the settlement of the provisions of the compensation law, including the right of subrogation in the employer, and I do not think that the employer is concluded by the settlement to which it was not a party. There is much support for this view in the decisions of other jurisdictions, apparently the majority. See the strongly reasoned opinion in *Napier v. John P. Gorman Coal Co.*, 242 Ky. 127, 45 S. W. (2d) 1064, (summarized in 88 A. L. R. 675, 676) and the other authorities there cited. Cases of similar result from the courts of New York, Nebraska, California, Iowa, Alabama, Pennsylvania and Wisconsin are digested in the annotations in 19 A. L. R. 788, 789; 67 A. L. R. 266, 267, 271, 272; and 88 A. L. R. 687.

The stated rule is recognized in the following quotation from 71 C. J. 1567, Workmen's Compensation Acts, Sec. 1606: "So, according to some cases, a settlement between an employee and a third person, without the consent of the employer, does not destroy or otherwise affect the employer's right given by the act, to recover from a third person; such a settlement made without the consent of insurer does not affect insurer's rights in this regard. The rule applies where a settlement is made without consent as required by a provision of the act in the case of the employer or insurer. Where the act provides that the making of a claim for compensation

shall operate as an assignment, a settlement between the employee and the third person is a nullity in so far as the employer or insurer is concerned, where the employee has made a valid claim for compensation. The effectiveness of a settlement between the employee and the third person has, however, been recognized in some cases, even where the consent required by the act was not obtained. The view has been expressed that a covenant of an employee not to sue a third person does not deprive the employer or insurer of any right of subrogation". See also, 71 C. J. 926, Sec. 678.

The principle is likewise embraced in the following from 28 R. C. L. 739: "In case the employee has compelled the payment of compensation by the employer, the latter becomes subrogated to any right of recovery that the employee might have enforced against a third person. And if the employee has settled with the third person, the employer, in a subsequent proceeding to enforce the payment of compensation, is entitled to credit for the amount paid in settlement of the claim". For the foregoing R. C. L. cites *Rosenbaum v. Hartford News Co.,* 92 Conn. 398, 103 A. 120, and the appended annotation in L. R. A. 1918-F, 521, 524.

The majority opinion is influenced by decisions of the courts of Tennessee and Virginia. The first is *Walters v. Eagle Indemnity Co.,* 166 Tenn. 383, 61 S. W. (2d) 666, 88 A. L. R. 654, where the compensation act of the State of Tennessee, quoted in the opinion, is quite different from that of this State and the decision is dependent upon the terms of the act, Code 1932, § 6865 (the employee may claim compensation "or proceed at law" or both) and not upon the proposition that the right of the employer to subrogation, if liable, had been destroyed by the voluntary settlement of the injured employee with the third person tort-feasor. Moreover, the facts of the case were not those before us. There the injured employee brought suit against the alleged tort-feasor which went to trial and during the trial the settlement was reached. That procedure was much nearer fulfillment of the condition of our statute, but still not quite. Our statute

does not contain the words of the Tennessee law upon which the cited decision largely rests, that the injured employee "shall not be entitled to collect from both". In that case it does not appear that in the claim for compensation it was sought to credit upon any award the substantial sum recovered from the third person tort-feasor, which is the condition of the award under attack in the instant appeal. Indeed, I see no important point in the case which is similar to ours.

The other decision relied upon by the majority is *Stone v. George W. Helme Co.*, 184 Va. 1051, 37 S. E. (2d) 70. The pertinent act is set out in the margin of the report of the case and demonstrates its differences from ours. However, a more important distinction is that the reason for that decision was that otherwise the claimant would be entitled to a *double recovery*. That point is not in our case for credit was allowed upon the compensation award for the whole amount paid to this claimant by the tort-feasor. It is not suggested that he recover any more than he is entitled to under the compensation act alone.

The North Carolina Compensation Act which governed the decision of *Rowe v. Rowe-Coward Co.*, 208 N. C. 484, 181 S. E. 254, was close in terms to ours. It provided that the "procurement of a judgment in an action at law (by the employee against the tort-feasor) shall be a bar" to compensation. Code 1931, § 8081(r). The employee sued the tort-feasor by way of counterclaim for the alleged tort which caused his compensable injuries. He failed in his cross-action and collected nothing, whereupon his subsequently revived claim for workmen's compensation was allowed. The court found no election in that case even under the applicable statute and suit brought to unsuccessful conclusion.

It is said in the leading opinion, upon the authority of the cited Massachusetts decision (also relied upon by the Virginia court in *Stone v. George W. Helme Co., supra,* 184 Va. 1051, 37 S. E. (2d) 70), that the right of subrogation

in the employer does not depend upon equitable principles but is purely statutory and arises when the conditions are met which are specified in the act. This seems to me to mean that the statutory right of subrogation of the employer is fixed by law and is beyond effect of any transaction between the injured employee and the tort-feasor to which the employer is not a party. And that is as it should be; the valuable right of subrogation, carefully created by solemn statute, should not be subject to destruction by the secret transaction of the employee and tort-feasor, and I do not think that it is. It was said in the opinion in *Rosenbaum v. Hartford News Co., supra*, 92 Conn. 398, 103 A. 120, 121, L. R. A. 1918-F, 521: "If the settlement (between the employee and the tort-feasor) is made behind the back of the employer, he will not be bound by it. But, if it is to his advantage to do so, he must be permitted to ratify it * * *."

I fear that the majority decision creates a condition in which collusion is invited, from which employees will suffer in the loss of compensation for injuries. There may well be cases in which the liability insurer of the tort-feasor is the compensation carrier of the employer, which was not the case here. However, the rather prompt settlement with the badly injured employee, before suit brought, was effected by the liability insurance carrier of the alleged tort-feasor, which by reason of the nature of its business was doubtless thoroughly familiar with the provisions of the compensation law. In any event, the law itself was constructive notice of its terms. There is this further consideration which is important irrespective of collusion: It is common knowledge that people generally, and especially liability insurers, frequently pay relatively nominal sums for releases in cases where there is probably no liability, rather than defend lawsuits. Every such release executed by unwary workmen will deprive them of their otherwise deserved benefits under the compensation act, by the majority decision. Such result is not expressed in the terms of our act and I do not think that it can be reasonably implied or inferred. The facts of *Stone*

*v. George W. Helme Co., supra*, 184 Va. 1051, 37 S. E. (2d) 70, make it, I think, a striking example of miscarriage of justice. It should constitute a warning of the error of the rule

I am convinced that the majority decision of the court does violence to the compensation act and denies benefits to the claimant which he was intended by the law to receive. Hence I disagree. I think claimant is entitled to compensation despite his "release" of the tort-feasor, less the sum received therefor; and the employer entitled by subrogation, relating back to the tort, to sue the tort-feasor, giving credit upon any recovery for the amount paid for the "release".