COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued at Alexandria, Virginia


UNITED AIRLINES, INC.
                                                           OPINION BY
v.        Record No. 2054-10-4                    JUDGE LARRY G. ELDER
                                                            MAY 10, 2011
THOMAS M. HAYES


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Michael N. Salveson (Andrea Zizzi; Littler Mendelson, P.C., on
            briefs), for appellant.

            Peter M. Sweeny (Peter M. Sweeny, Esquire, P.C., on brief), for
            appellee.


        United Airlines, Inc., (employer) appeals from a decision of the Workers' Compensation

Commission (the commission) holding that Thomas M. Hayes (claimant), a former employee, is

entitled to ongoing benefits under the Workers' Compensation Act (the Act), Code §§ 65.2-100

to -1310.  On appeal, employer contends the commission erroneously found claimant did not

materially aggravate his compensable traumatic brain injury in a subsequent automobile accident

and erroneously held that claimant's settlement of his third-party cause of action arising out of

the automobile accident, without notice to the employer, did not prejudice employer as related to

claimant's compensable brain injury.  We hold evidence of prejudice from the settlement as to

injuries other than the compensable brain injury does not justify termination of the award for that

injury.  We hold further the evidence supports the commission's finding that claimant's 2006

auto accident did not materially aggravate his compensable 2004 brain injury and, thus, that the

commission correctly concluded employer has failed to establish prejudice as to that injury.

Accordingly, we affirm the commission's refusal to terminate benefits for claimant's traumatic brain injury.

## I. BACKGROUND

On April 5, 2004, claimant, a computer technician for employer, sustained injuries to several body parts, including his head and brain, when some steel shelving fell on him. He was diagnosed with a closed head trauma with cerebral concussion and post-concussive syndrome. He came under the care of neurologist Harmeet Singh, who saw him on three occasions and referred him to a hospital head injury center for further evaluation and management. Claimant was hospitalized for almost four weeks and underwent treatment during which he reported he "had to [re-]learn how to walk and talk." Upon his discharge, he continued with an outpatient program. Claimant also experienced severe pain in his lower back, left arm, and left knee and received treatment for those injuries, as well. While hospitalized for his brain injury, claimant came under the care of psychiatrist Nooreddin Mirmirani, who continued to oversee claimant's care for the traumatic brain injury following his release from the hospital. Employer accepted the brain injury as compensable, and the commission later held the injuries to his lower back, left arm, and left knee were compensable, as well.

On April 18, 2006, a little over two years after sustaining his compensable industrial injuries, claimant was in an automobile accident when he was hit from behind while stopped at a traffic light. About thirteen months later, without consulting employer or its third party administrator, claimant settled all claims arising out of the 2006 auto accident.

On February 15, 2008, employer filed an application for hearing seeking to terminate claimant's compensation award, contending claimant's 2006 auto accident aggravated his 2004 compensable lower back injury and that he settled the claim in a manner that prejudiced employer's right of subrogation. The deputy commissioner agreed and terminated the award.

- 2 -

On request for review, claimant conceded he forfeited workers' compensation rights as to his back injury but contended that because he suffered ongoing temporary total disability causally related to the work-related injuries to his brain, left arm, and left knee, employer was not entitled to terminate his benefits. The commission noted it appeared employer had claimed only that the auto accident aggravated the compensable back injury and, thus, that the deputy did not address whether the auto accident aggravated claimant's brain, knee, and arm injuries. The commission also noted a gap in some of the relevant medical records filed with the commission. It remanded the matter to the deputy to take additional evidence in order to determine whether the 2006 auto accident "sufficiently aggravated the claimant's brain injury, left arm injury and left knee injury resulting in a material change in the claimant's symptoms related to the original work accident."

On remand, the deputy concluded claimant's settlement of his third-party suit defeated employer's subrogation rights as to claimant's left arm and leg injuries. However, the deputy found the 2006 motor vehicle accident did not materially aggravate claimant's 2004 brain injury. The deputy said claimant was "diagnosed following the accident as having a closed head injury/concussion," but that Dr. Mirmirani, who treated claimant throughout the relevant period and reviewed the emergency room records, testified "there was no significant change in the claimant's condition as a result of the accident." The deputy also noted that Dr. Mirmirani's was "the only opinion proffered on the issue" of claimant's mental status and that his opinion was entitled to great weight. The deputy concluded claimant's settlement of his third-party claim did not support termination of his workers' compensation benefits because claimant sustained "very distinct and separate injuries" and the auto accident aggravated only some of those injuries.

Employer filed a request for review, and the commission affirmed the deputy's decision with modifications. Although one commissioner concurred to express his opinion regarding the credibility of some of the evidence, the commission unanimously agreed that Code § 65.2-309

"mean[s] that [the commission] can determine forfeiture on a body part basis" and rejected employer's argument that "any unauthorized compromise of a third-party claim means forfeiture of all compensation benefits." The commission affirmed the deputy's finding, based on the opinion of claimant's treating physician, that the motor vehicle accident did not materially aggravate claimant's brain injury or change his disability status. The commission agreed with the deputy that the third-party accident materially aggravated claimant's left arm injury, such that the third-party settlement impaired employer's subrogation rights as to that injury. However, the commission modified the deputy's decision as to claimant's left knee injury, finding claimant did not injure his left knee in the 2006 auto accident and, thus, that the third-party settlement did not prejudice employer's rights as to that injury.[1]

Commissioner Williams concurred, agreeing that regardless of the credibility of claimant and Dr. Mirmirani, the record did not contain sufficient evidence to support a finding that claimant's brain injury was aggravated by the 2006 auto accident. Commissioner Williams opined further that although claimant may have been only partially disabled as a result of his brain injury, because claimant was under an award for temporary total disability and because "no basis has been shown which would justify termination of that award, even partial disability related to the brain injury is sufficient to support reinstatement of [disability] benefits."

## II. ANALYSIS

On appeal, we are guided by the principle that the Workers' Compensation Act "is highly remedial," Henderson v. Cent. Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987), and "should be liberally construed in favor of the injured employee," E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002). "Although 'we are not bound by the

---

[1] The commission's determinations as to claimant's left arm and left knee are not contested in this appeal.

- 4 -

commission's legal analysis in this or prior cases,' we give great weight to the commission's construction of the Act . . . , and we defer to the commission's factual findings if supported by credible evidence in the record." Bay Concrete Constr. Co. v. Davis, 43 Va. App. 528, 538-39, 600 S.E.2d 144, 150 (2004) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.l, 497 S.E.2d 904, 906 n.l (1998)) (citations omitted).

## A. IMPACT OF SETTLEMENT OF THIRD-PARTY SUIT

Employer contends the commission erred in determining that, in the event a claimant settles a third-party claim without notice to the employer, the Workers' Compensation Act permits forfeiture of benefits on a piecemeal, "body part by body part" basis. Employer argues the commission should instead have concluded that proof of prejudice to employer's rights from claimant's settlement of his claim as to one body part was sufficient prejudice to justify terminating the award as to all body parts. Employer also contends the commission should have considered the prejudice that resulted from its loss of the ability to investigate the third-party accident and the issue of causation in a timely fashion after that accident. Our examination of the structure and function of the applicable statute and case law leads us to reject these contentions and to affirm the commission's unanimous interpretation of the statute.

Code § 65.2-309 provides in relevant part as follows:

> A claim against an employer under this title for injury . . . shall create a lien on behalf of the employer against any verdict or settlement arising from any right to recover damages which the injured employee . . . may have against any other party for such injury . . . , and such employer also shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee . . . , the legal liability of such other party.

Code § 65.2-309(A). In short, "an employer is subrogated to the rights of an employee against any other party causing an injury . . . for which the employer is required to provide compensation under the [Act]." Green v. Warwick Plumbing & Heating, 5 Va. App. 409, 411, 364 S.E.2d 4, 6

- 5 -

(1988).  The purpose of the statute is to give the injured employee "an opportunity to obtain one full recovery [while preventing] him from receiving a double recovery for his injuries."  Noblin v. Randolph Corp., 180 Va. 345, 359, 23 S.E.2d 209, 214 (1942).  "The right of subrogation here does not depend upon equitable principles . . . .  It is purely statutory and arises when the conditions specified in the statute are met."  Stone v. George W. Helme Co., 184 Va. 1051, 1059-60, 37 S.E.2d 70, 73 (1946).

In determining the subrogation rights of the employer, "[n]o distinction is made between the liability of a third [party] who causes an original injury and one who causes an aggravation of that injury."  Green, 5 Va. App. at 411, 364 S.E.2d at 6.  This is so because "[a]n employee is entitled to continued compensation, in spite of an intervening accident, if the intervening accident exacerbates the original injury."  Id.  Compare id. with Celenese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985) (noting that "[w]here . . . causal connection between an industrial accident and disability has been established by the entry of an award, an employer has a right to apply for termination of benefits upon an allegation that the effects of the injury have *fully* dissipated and the disability is the result of another cause" (emphasis added)).  Because "an employee is entitled to compensation from his or her employer [for the exacerbation], . . . [the] employer is subrogated to the rights of its employee against a third party who injures the employee."  Green, 5 Va. App. at 411-12, 364 S.E.2d at 6.  Just as in the case of a single, "unitary" accident, this principle assures the claimant will receive compensation for his injury but will not receive a double recovery.

"[T]o protect the employer who may be required to provide . . . workers' compensation benefits [to the employee injured due to third-party negligence], [the Supreme Court has held that] the employee may not pursue his common law remedy [in the third-party matter] in such a manner or settle his claim to the prejudice of the employer's subrogation right and thereafter

- 6 -

continue to receive worker's compensation benefits." Wood v. Caudle-Hyatt, Inc., 18 Va. App. 391, 397, 444 S.E.2d 3, 7 (1994); see Stone, 184 Va. at 1058, 37 S.E.2d at 73 (citing Noblin, 180 Va. at 359, 23 S.E.2d at 214); see also Safety-Kleen Corp. v. Van Hoy, 225 Va. 64, 69-71, 300 S.E.2d 750, 753-54 (1983). "The penalty for impairing the employer's right may be loss of the employee's right to compensation benefits. But, where impairment is claimed, to successfully be relieved of its liability to pay compensation benefits, the burden is upon the employer to show that the employee prejudiced the employer's right." Overhead Door Co. v. Lewis, 22 Va. App. 240, 243, 468 S.E.2d 700, 701 (1996). Whether the employer has shown prejudice is a question of fact. White Elec. Co. v. Bak, 22 Va. App. 17, 24, 467 S.E.2d 827, 830 (1996); Newport News v. Blankenship, 10 Va. App. 704, 708, 396 S.E.2d 145, 147 (1990).

Where the compensable injury and the third party claim arise out of a single, "unitary" accident, manifestly the injuries incurred are the same. Where a claimant injured under such circumstances accepts a sum of money "in consideration of which he execute[s] a full and complete release of all of his claims against [the third-party tortfeasor]" without the knowledge or participation of the employer, "the employee . . . completely destroy[s] by his own voluntary act" the employer's "statutory right of subrogation," thereby constituting the required showing of prejudice to the employer. Stone, 184 Va. at 1060, 37 S.E.2d at 74.

Where, as here, the third-party negligence occurs at a separate time from the original compensable industrial accident, the calculus changes. As set out above, the employer must pay continuing compensation for the original injury and any exacerbation, and to the extent the original injury and the subsequent injury are the same "injury" for purposes of Code § 65.2-309, employer is subrogated to the claimant's rights against the third-party tortfeasor in order to prevent the claimant from receiving a double recovery. Green, 5 Va. App. at 411-12, 364 S.E.2d at 6. However, because the injuries occurred at separate times, the employer is not entitled to an

inference that the new injury and the original injury are the same injury, and the burden remains on the employer to show the settlement prejudiced the employer's right of subrogation, if any, see Lewis, 22 Va. App. at 243, 468 S.E.2d at 701.

Where the evidence supports a finding that an original compensable injury was exacerbated by a third-party injury, the commission does not err in concluding that because "the employer's right to subrogation [is] limited to benefits arising as a result of the exacerbation of the original injury and [does] not include benefits attributable only to the original injury," the unauthorized settlement compels termination "only [of] those benefits arising as a result of the exacerbation of the original injury." Green, 5 Va. App. at 413 & n.1, 364 S.E.2d at 7 & n.1. In addition, where an original injury is exacerbated but the commission finds the exacerbation was "short-lived," the evidence supports a finding that the employer has failed to establish the prejudice necessary to compel termination of benefits even for the exacerbation. Blankenship, 10 Va. App. at 708-09, 396 S.E.2d at 147-48 (involving the commission's finding that an eleven-day exacerbation did not prejudice the employer); see Bak, 22 Va. App. at 23, 467 S.E.2d at 830 (applying Blankenship to a brief exacerbation where the commission found the employer failed to prove prejudice).

Finally, we conclude, as claimant reasons, that if settlement of a third-party claim involving what has been shown to be merely a temporary aggravation of an original compensable industrial injury is insufficient to show prejudice justifying termination of the underlying award, see Green, 5 Va. App. at 413 & n.1, 364 S.E.2d at 7 & n.1; see also Bak, 22 Va. App. at 23, 467 S.E.2d at 830; Blankenship, 10 Va. App. at 708-09, 396 S.E.2d at 147-48, settlement of a third-party claim for an injury never shown to be any type of aggravation has not been proven to prejudice the employer as to employer's liability for the original injury. Any other conclusion would subvert the principle that the Act is to be construed liberally to benefit injured employees.

See, e.g., Eggleston, 264 Va. at 17, 563 S.E.2d at 687. Thus, the statutory framework, which refers to "such injury," Code § 65.2-309(A), as well as the case law interpreting it, supports the commission's implicit conclusion that we must examine the impact of the third-party settlement on each originally injured body part individually; the language does not support aggregating all injured body parts and concluding the settlement of a subsequently arising third-party claim involving injury to one of those body parts prejudices employer as to all of them.

Employer contends it was prejudiced as to the entire ongoing award for claimant's compensable 2004 brain injury because it did not receive notice of the 2006 auto accident at a time allowing it to investigate the impact of that accident on his compensable brain injury before claimant executed the settlement. This argument begs the question, for employer was prejudiced, as that term is used in the context of Code § 65.2-309, by the lack of opportunity to investigate prior to the third-party settlement and to participate in that settlement only if the 2006 auto accident caused more than a temporary aggravation of claimant's 2004 compensable traumatic brain injury. See Green, 5 Va. App. at 413 & n.1, 364 S.E.2d at 7 & n.1; see also Bak, 22 Va. App. at 23, 467 S.E.2d at 830; Blankenship, 10 Va. App. at 708-09, 396 S.E.2d at 147-48. Employer was equally free to investigate the question of causation of claimant's ongoing brain problems after claimant settled the auto accident claim. If employer could prove settlement prejudiced its right of subrogation as to some or all of the ongoing award, it was entitled under Code § 65.2-309(D) to seek (a) termination of the award and/or (b) credit or a civil judgment for any excess compensation claimant received.

Further, to the extent employer contends the delay itself constituted sufficient constructive prejudice to its rights, without proof that it suffered actual prejudice in the form of an affirmative impairment of any subrogation rights it may have had, we disagree. The notice Code § 65.2-309 has been held to require is notice prior to entering into a settlement, see Stone,

184 Va. at 1058-60, 37 S.E.2d at 73-74; Wood, 18 Va. App. at 397-98, 444 S.E.2d at 7-8, not notice within any particular period of time following the happening of the accident or the occurrence of a new injury or aggravation.  Here, although employer bore the burden of proving prejudice, it failed to allege or offer any evidence intended to show when it or its third-party claims administrator became aware of the 2006 motor vehicle accident, and as detailed below, the record supports a finding that employer, through its third party administrator, had at least constructive notice of the accident within ten weeks of when it occurred.

Pursuant to the Act, an employer is entitled to receive copies of all relevant records of a medical provider before paying the bill for a particular treatment or office visit.  See Code § 65.2-604 (providing an employer is entitled to reports for compensable treatment upon request); Workers' Comp. Comm'n Rule 4.2 (providing that a medical care provider attending an injured employee shall, upon request, furnish a copy of "[a]ll medical reports relevant to a claim," including "[c]umulative progress notes" and "reports"); see also Wiggins v. Fairfax Park Ltd. P'ship, 22 Va. App. 432, 442-43, 470 S.E.2d 591, 596-97 (1996) (recognizing the statutory duty of medical providers to produce a claimant's records upon request of the employer and noting a claimant may be required to select a new health care provider if an existing provider refuses to comply with a valid request); Hassell v. Arlington Co. Human Servs., 79 O.W.C. 141, available at 2000 WL 1517897 (Va. Workers' Comp. Comm'n June 29, 2000) (holding an employer is released from the responsibility of paying a provider for medical treatment if the provider fails to provide medical reports within a reasonable time); Smith v. Mullins Coal Co., 78 O.W.C. 202, available at 1999 WL 1006903 (Va. Workers' Comp. Comm'n Oct. 19, 1999) (holding pursuant to Commission Rule 4.2 "that the parties have a right to receive and review all medical documents which are *or may be* related to the claimant's condition" (emphasis added)). Here, when claimant saw Dr. Mirmirani on May 17, 2006, for his compensable 2004 head injury,

claimant told Dr. Mirmirani about his April 18, 2006 auto accident. Dr. Mirmirani included information about the auto accident in his office note of that date. On June 23, 2006, about nine weeks after claimant's auto accident, employer paid Dr. Mirmirani's bill for that office visit. Further, an affidavit from employer's third party administrator indicates it paid this particular bill, as well as numerous others, "[on employer's behalf] for the claimant's 'necessary medical attention' that was causally related to the claimant's lifetime medical Award on this claim." This evidence supports a finding that as of June 23, 2006, employer's agent had reviewed Dr. Mirmirani's office note of May 17, 2006, and, thus, had at least constructive notice of claimant's April 18, 2006 auto accident and claimant's reports to Dr. Mirmirani indicating his head and back may have been involved.

Even assuming employer lacked constructive notice of the 2006 motor vehicle accident until shortly before it filed its February 2008 application for change in condition (based on its allegation that claimant sustained additional injury to his compensable lower back problem) or lacked actual notice of the possibility that claimant reinjured his brain in the 2006 motor vehicle accident until the commission pointed this out in its opinion rendered in April 2009, employer still had constructive notice of the auto accident and related injuries within two years and actual notice within three years. If claimant had waited this same period of time, until 2008 or 2009, to settle his auto accident claim and had consulted employer immediately prior to entering into the settlement, he would have acted in compliance with the statute as interpreted to date by the Supreme Court, and yet employer would be no better off than it is here for purposes of investigating causation. Employer cites no authority, beyond the general principle that a claimant may not settle a third-party claim in a manner that prejudices an employer's subrogation rights, in support of its argument that it was entitled to actual notice of a subsequent accident that the commission found did not, in fact, impair its subrogation rights, and we are aware of no such

authority.  Compare Code § 65.2-711 (requiring a claimant to report to the commission any change in his residential address); Code § 65.2-712 (requiring a claimant to report, *inter alia*, a return to employment or increase in earnings); Code § 65.2-1206 (providing that where benefits are being paid by the Uninsured Employer's Fund (the fund), "[a]ny payment to a claimant . . . which is later determined by the Commission to have been procured by fraud, mistake or an unreported change in condition, shall be recovered from the claimant and credited to [the fund]").  The right, upon proof of prejudice, to seek termination of an award or credit or a civil judgment for benefits paid under it, rather than the guarantee of an opportunity to investigate in advance of any settlement, is the remedy the Supreme Court has determined is provided by the Act.  See Stone, 184 Va. at 1058, 37 S.E.2d at 73; Lewis, 22 Va. App. at 243, 468 S.E.2d at 701.

Furthermore, to the extent employer claims its investigation was prejudiced because Dr. Mirmirani learned claimant's workers' compensation benefits were in jeopardy and thereafter slanted his medical opinion to benefit claimant, neither the Act nor the case law provides that a medical provider's mere knowledge of the status of a workers' compensation claim is a bar to a claimant's receipt of ongoing benefits.  The statutory scheme provides, instead, that the commission determines the credibility of the parties' witnesses as a finding of fact, see, e.g., Dep't of Corr. v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986), which the commission did in this case, see discussion infra Part II.B.

Thus, we turn to the question of the sufficiency of the evidence to support the commission's factual findings underlying its conclusion that employer failed to prove the third-party settlement itself, rather than any right to contemporaneous notice of the accident, prejudiced employer's subrogation rights as to his brain injury.

B.

IMPACT OF CLAIMANT'S AUTO ACCIDENT ON HIS BRAIN INJURY

As previously indicated, whether employer has shown it was prejudiced by claimant's settlement of his 2006 auto accident claim is a question of fact. See Bak, 22 Va. App. at 24, 467 S.E.2d at 830; Blankenship, 10 Va. App. at 708, 396 S.E.2d at 147. A determination regarding the causation, nature, and extent of disability is also a question of fact. See, e.g., Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 133-34, 435 S.E.2d 898, 901 (1993). Such determinations need not be based solely on medical evidence. See Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (applying principle in context of determining causation). Such facts may be proved by either direct or circumstantial evidence, including medical evidence or "the testimony of a claimant." Id.

"'As the factfinder, the commission is charged with the responsibility of resolving questions . . . of controverted facts,'" including questions of witness credibility. Metro. Wash. Airports Auth. v. Lusby, 41 Va. App. 300, 312, 585 S.E.2d 318, 323 (2003) (quoting Va. Empl. Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811 (1989)). Decisions of the commission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence. Code § 65.2-706(A); see Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991).

The opinion of the treating physician is entitled to great weight, although the commission is not required to accept it, Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986), and "if it is in conflict with other medical evidence, the Commission is free to adopt that view 'which is most consistent with reason and justice,'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (quoting C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)). In determining the credibility of any

witness, the fact finder may accept the parts of a witness' testimony it finds believable and reject other parts as implausible. Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc). "The fact that a witness makes inconsistent statements . . . does not render his testimony . . . unworthy of belief. . . . It is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements . . . on the stand is a question . . . for the . . . trier of the facts . . . ." Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).

Here, the record supports the commission's finding that employer failed to prove it was prejudiced by the third-party settlement because the evidence, viewed in the light most favorable to claimant, established that claimant (1) suffered no exacerbation of his compensable 2004 brain injury in the 2006 auto accident and (2) continued to be temporarily and totally disabled as a result of the 2004 brain injury after the 2006 auto accident.

Dr. Mirmirani, claimant's treating physician for his compensable 2004 traumatic brain injury (TBI), was uniquely suited to render an opinion about claimant's condition both before and after the 2006 auto accident. Dr. Mirmirani began treating claimant in 2004 while he was hospitalized and undergoing extensive rehabilitation for his TBI. He saw claimant almost monthly for more than a year preceding the 2006 auto accident, including conducting an office visit with claimant just a week before the auto accident occurred. He also saw claimant regularly after the accident, including three months in succession beginning about four weeks after the accident, and then, after a ten-week break during which claimant traveled out-of-state to see his ailing mother, ten to twelve times per year for the next three years thereafter.

Dr. Mirmirani reviewed his own records and examined the records of claimant's treatment in the emergency room immediately following his 2006 auto accident before opining "there was no substantiation that [claimant] suffered from an additional head injury" in the 2006

auto accident.  He also noted claimant's "psychiatric and intellectual" condition and symptoms had undergone no substantial change during his more than five years of treating claimant and that those symptoms remained consistent with claimant's 2004 TBI.

Dr. Mirmirani opined shortly before the 2006 auto accident that claimant's "mental energy [was] adequate" but noted "he still complain[ed] of tiredness during the daytime," still required medication to sleep at night, and continued to suffer from memory dysfunction and cognitive impairment, for which he also took medication.  Claimant was continuing to experience intermittent headaches, as well.  Dr. Mirmirani also explained that having had a TBI adversely affects one's ability to cope with any sort of stress.

Although the record contained conflicting evidence concerning whether claimant said he hit his head during the auto accident, Dr. Mirmirani explained that even if claimant had experienced "a little bang" in the accident, that "little bang," standing alone, would have been insufficient to aggravate his 2004 TBI.  Dr. Mirmirani explained that to constitute a new head injury of a caliber sufficient to aggravate his 2004 TBI, claimant would have to have had at least a concussion or a period of amnesia.  To the contrary, opined Dr. Mirmirani, the emergency room records—which showed no contusions or abrasions to the head and included an MRI of the head that also showed "nothing"—contained "no clinical presentation that [claimant] suffered any type of injury to the brain" in the 2006 auto accident.

The emergency room records themselves, viewed in the light most favorable to claimant, also do not substantiate such an injury.  The emergency medical technician who responded to the scene detected "no marks or swelling" on claimant's forehead and determined his pupils, although one was slightly larger than the other, were reactive to light.  The hospital nursing record and physician's record both indicated claimant suffered no visible head trauma.  The nurse recorded claimant had a history of "TBI 2 yrs ago," giving him a "[questionable] baseline."

- 15 -

Although the nurse indicated claimant exhibited some "confus[ion]" or "memory loss" as to time "[secondary to] TBI," the nurse did not indicate that the TBI referenced was a new one rather than the TBI of "2 yrs ago" noted under past history. Finally, the physician's record indicates claimant was fully alert and oriented and contains no diagnosis of a concussion or other head injury requiring medical attention. Although claimant apparently reported head pain to both the nurse and examining physician, he also testified he had a headache that began to develop that day shortly *before* the accident occurred. Thus, nothing in the emergency room record compels the conclusion that the commission erred in accepting Dr. Mirmirani's opinion that claimant did not aggravate his 2004 TBI in the 2006 auto accident.

Finally, claimant reported to Dr. Singh, whom he saw about six weeks after the accident, that his symptoms from his post-concussion syndrome "remain[ed] the same without any change" following his 2006 auto accident, and claimant gave testimony to the same effect at the hearing before the deputy commissioner.

Dr. Mirmirani opined that "[w]ithin the first two years, up to two years [after a TBI] you have a good chance" of "recovery" but that claimant "never intellectually and emotionally recovered" from the 2004 TBI "to the level that he could be gainfully employed." Mirmirani wrote, "It is my professional opinion that all of his current residual intellectual and emotional difficulties and deficiencies are related to his original traumatic brain injury in 2004," and he stated further, "[o]verall from my observation, his clinical presentation, current mental status and failure to pass even a simple test to become a volunteer, in my opinion he remains totally disabled and unable to be gainfully employed."

Employer contends the evidence in the record of claimant's employment and job search history before and after the 2006 auto accident impeaches Dr. Mirmirani's opinion that claimant's condition remained substantially unchanged after the auto accident. It points to

evidence that before the 2006 accident, claimant had "adequate" energy; was "continuing to improve"; had returned to work for employer with only a minimal restriction preventing him from working evenings or weekends; and was seeking, with Dr. Mirmirani's encouragement, a new job as a private detective. After the 2006 auto accident, posits employer, claimant's condition worsened; Dr. Mirmirani first opined that, as of October 18, 2006, claimant's combined disabilities rendered him totally disabled; and claimant was unable to pass a simple test to work as a volunteer. Employer's argument fails because it views the evidence in the light most favorable to employer rather than to claimant.

The evidence, viewed in the light most favorable to claimant, established that Dr. Mirmirani never opined claimant was intellectually or cognitively capable of returning to his pre-injury employment or any other job. A neuropsychologist, who examined claimant on only one occasion, rather than treating physician Dr. Mirmirani, released claimant to return to his pre-injury job. While claimant worked in his pre-injury position for about six months from December 2004 to June 2005, he testified his cognitive and memory deficits were an ongoing problem and that his co-workers gave him only the easiest tasks and "covered for him." Also, Dr. Mirmirani never released claimant to be on call for night and weekend work as his employer had desired, because of both claimant's problems with fatigue and his need to have close supervision in order to perform even the easiest tasks from his pre-injury work. Finally, the evidence established claimant was terminated from that employment in June 2005 "because he [did] not fit his job description," at which time employer resumed paying temporary total disability benefits.

Claimant remained eager and optimistic when he began working with the vocational rehabilitation company hired by employer, but he reported finding it "quite difficult" to learn new technology in his field, and Dr. Mirmirani "suggested" that claimant might seek training "in

- 17 -

a less complicated field." When claimant also "found it extremely difficult" to comprehend "simpler" "materials in electronics," they discussed the field of private detection. When employer questioned why claimant could not work as a computer technician or electrician, Dr. Mirmirani emphasized claimant's cognitive impairment. He recommended employer obtain additional psychological testing to confirm claimant's cognitive impairment, but the records contain no indication that employer ever approved or sought such testing. Thereafter, although claimant completed a two-week course to become a private detective, successfully passed the open-book test prior to his 2006 traffic accident, and was motivated to try to obtain such a job, the evidence supported a finding that he simply was not capable of working as a private detective before or after his 2006 auto accident. Claimant explained that he was able to pass the open-book test because the day before it was given, his instructor dictated detailed notes to his students, including the page numbers in the book on which information about various topics could be found. Claimant testified that when he checked with potential employers, he learned available positions would require work early in the morning or late at night, times he was not able to work due to his medication and sleep issues. Finally, claimant testified that the problems he exhibited with poor spelling and sentence structure on a volunteer test he took early in 2008 had existed since the 2004 compensable industrial injury. He stated further that the symptoms from his 2004 TBI did not change in any way following the 2006 auto accident and that he had the same problems functioning at the time of the November 2009 hearing before the deputy that he had when he tried to return to work with employer in late 2004 and 2005. Dr. Mirmirani also expressly opined that claimant "never intellectually and emotionally recovered to the level that he could be gainfully employed."

To the extent employer argues claimant and Dr. Mirmirani made inconsistent statements, none of these claimed contradictions rendered their testimony inherently incredible. Thus, it was

within the province of the commission, as the finder of fact, to determine whether to credit their testimony and, if so, which aspects of it. The testimony of claimant and opinion of Dr. Mirmirani that claimant's symptoms from his traumatic brain injury did not change in any way following the 2006 auto accident were not inherently incredible, and the commission's decision to credit those opinions was not plainly wrong.

III.

For these reasons, we hold the evidence supports the commission's finding that claimant's 2006 auto accident did not materially aggravate his compensable 2004 brain injury and, thus, that the commission correctly concluded employer has failed to establish prejudice as to that injury. Accordingly, we affirm the commission's refusal to terminate benefits for claimant's traumatic brain injury.

Affirmed.