COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued by teleconference

CAROLYN BLOW

                                                MEMORANDUM OPINION* BY

v.       Record No. 1393-18-1                  JUDGE ROBERT P. FRANK
                                                    APRIL 16, 2109

YORK COUNTY PUBLIC SCHOOLS AND
 VIRGINIA ASSOCIATION OF COUNTIES GROUP


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Carolyn M. Blow, *pro se*.

        Faraaz A. Jindani[1] (Scott C. Ford; Ford Richardson, PC, on brief),
        for appellees.


        Carolyn Blow, claimant, appeals a decision of the Virginia Workers' Compensation

Commission (the Commission) finding that she did not injure her neck in a work accident, her

disability from January 2017 through May 22, 2017, was not related to a work accident, and

York County Public Schools and Virginia Association of Counties Group (collectively

"employer") were responsible for only her medical treatment at Patient First on August 12, 2015.

On appeal, claimant contends that the Commission erred (1) in failing to consider all of her

medical records and (2) in denying her claim for wage benefits and medical benefits.  We affirm

the Commission's decision.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] On April 5, 2019, this Court approved the substitution of Faraaz A. Jindani, Esq. to
present oral argument on behalf of appellees in this case.

UNPUBLISHED

BACKGROUND

On appeal, we view the evidence in the light most favorable to employer, the party prevailing below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212 (1990). So viewed, the evidence established the following:

Claimant was employed as a school bus driver for employer. During the summer, when school was not in session, her job required her to wash the school buses. On August 12, 2015, while washing a bus, she slipped on a slippery step from the top step of the bus, falling to the concrete floor. At the January 31, 2018 hearing before the deputy commissioner, claimant testified she injured her hip, back, and neck.[2] However, we note that on her January 23, 2017 original claim for benefits, claimant indicated she injured her lower back, pelvis, shoulder, and spine, but not her neck.

Claimant visited Patient First on the same day of the injury. The medical records from that date indicated claimant suffered multiple contusions and was released to return to full duty on August 13, 2015. The medical records also state claimant's "Chief complaint" was "Fell down the steps and hit the lower back against the edge of the steps and fell on the concrete while washing a school bus."

Claimant went back to work "a couple of days" after the fall, and in December 2016, she claimed she was having "a lot of pain" "generating" in her shoulder. According to claimant, her doctor thought her shoulder pain "was coming from her neck." Claimant explained that although she worked from August 2015 until December 2016, she continued having physical problems with her neck, back, and right hip.

---

[2] Claimant withdrew any claims for injury to her right shoulder, spine, and pelvis, leaving only her claim for her lower back and neck injuries. The deputy commissioner dismissed her claims for injuries to her right shoulder, spine, and pelvis.

Claimant testified that she left work in December 2016, and, from December 2016 until May 22, 2017, she treated with Dr. Jackson B. Salvant, Jr., Dr. Jesus Lizarzaburu, and with medical providers at Rebound Chiropractic. She testified she told these medical providers about her August 12, 2015 work accident. Claimant explained that from December 2016 through May 2017, she complained of "a severe burning" in her neck, lower back pain, and numbness in her hand. Claimant testified that since August 12, 2015, she has had problems in her hip, back, and neck. Medical providers held claimant out of work from January 9, 2017 through May 22, 2017.

The following is a summary of claimant's medical treatment:

On December 30, 2016, claimant treated at Riverside Regional Primary, where she complained of right shoulder and neck pain for a week prior to December 30, 2016, and indicated her pain was worsening. The doctor's diagnosis notes also reflected "degenerative disease of neck and shoulder."

On December 31, 2016, claimant treated at Mary Immaculate Hospital, where she complained that she had had right shoulder pain for approximately one week. She indicated she did not suffer an injury, trauma or fall. The report stated "[t]here was no injury mechanism," and "[t]here is no history of shoulder injury."

On January 4, 2017, claimant treated with Michael B. Potter, M.D. at Tidewater Physicians Multispecialty Group for right shoulder pain. She completed a New Patient History Form in which she indicated her symptoms had started a week ago, but she did not have an injury. Dr. Potter's notes reflect claimant was under his care and was unable to work at that time. Dr. Potter's notes also stated claimant "may return back to work as of" January 9, 2017.

On January 17, 2017, claimant returned to Patient First, complaining of right shoulder pain that had begun approximately two weeks earlier. She reported that the pain "radiated

down" to her right hand. The history section of the office notes states, "This is a Worker's Compensation issue." The doctor diagnosed contusion of her right shoulder.

On February 3, 2017, claimant treated with Dr. Salvant at CIOX Health, complaining of numbness in her right hand for the past two years and pain radiating down her right shoulder and arm from her right neck for the last two months. Dr. Savant's assessment was "[r]ight-sided cervical radiculitis" and "[a]bnormal cervical radiographs with cervical spondylosis."

On March 6, 2017, claimant again treated with Dr. Salvant at Riverside Regional Medical for evaluation of the recently completed MRI scan of her cervical spine. She gave a history of "multiple falls" off of a bus. Dr. Salvant referred claimant back to her primary care physician and opined that her neck pain "may be due to muscular overuse or sprain."

On June 13, 2017, Dr. Jeffrey R. Carlson performed an Independent Medical Evaluation (IME) on claimant. Dr. Carlson reviewed claimant's medical records dating back to 2007 and completed a physical examination of claimant. Dr. Carlson's evaluation of claimant's medical records revealed past complaints of back pain as well as knee pain, knee arthritis, and a possible ACL injury. Dr. Carlson also reviewed claimant's MRI scan report, which revealed degenerative disc disease at C3 through C6 with mild spinal stenosis at C5-6. Dr. Carlson reviewed claimant's EMG/nerve conduction study, which revealed no cervical radiculopathy and borderline carpal tunnel syndrome.

Dr. Carlson's impression was that claimant had a fall on August 12, 2015, and was not having any pain in her neck, back, or hip prior to that accident. Dr. Carlson responded to the following questions that are relevant to this analysis:

> Do you agree that any complaints, if any, [claimant] is currently experiencing to her lower back are not related to her August 12, 2015 work accident? She complained of back pain on the right side since her injury August 12, 2015 and was seen in the Emergency Room at Patient First for that back pain related to the

August 12, 2105 incident, and her back and hip complaints could be related to that.

<u>What injuries do you believe, if any, did the complainant sustain as a result of her August 12, 2015 accident? Please explain.</u> I do believe that she injured her lower back with contusion of the right-sided lower back, buttocks and hip, as documented on her initial evaluation from Patient First from her injury on August 12, 2015.

<u>Do you agree that no further medical treatment is reasonable, necessary, or related to [claimant]'s August 12, 2015 work accident?</u> At this point she has almost completely resolved the lower back pain and hip pain, which is the only injury related to August 12, 2015. She would not need any further medical treatment at this time.

<u>Do you agree that any complaints, if any, [complainant] is currently experiencing to her neck are not related to her August 12, 2015 work accident?</u> Since the neck pain was not documented at the initial visit, I do not believe it is related to the August 12, 2015 incident.

On January 23, 2017, claimant filed a claim for benefits, alleging injuries to her lower back, pelvis, shoulder, and spine. She also filed claims for benefits on March 31, 2017, and June 6, 2017. Claimant requested compensation from December 31, 2016, through May 22, 2017, payment of certain medical bills, and a medical award.

The deputy commissioner found that claimant sustained compensable injuries to her low back and right hip on August 12, 2015 and found employer responsible for claimant's medical treatment at Patient First on August 12, 2015. However, the deputy found no medical evidence to support claimant's assertion that she suffered a neck injury on August 12, 2015, thus denying her claim for neck injury.

The deputy concluded as follows:

> We now consider the claimant's medical treatment beginning December 2016 through the present and the claimant's request for compensation from December 2016 through May 2017. We recognize the claimant has treated with a number of medical providers since December 2016. However, upon careful review of

- 5 -

the medical evidence, we find no medical evidence relating the claimant's medical treatment beginning in December 2016 through the present to her August 12, 2015 industrial accident besides Dr. Carlson's statement that claimant's current back and hip complaints "could be related" to her August 12, 2015 accident. We do not find Dr. Carlson's opinion on this issue rises to the level of medical causation. We recognize the claimant's testimony that since August 2015, she continued having problems with her neck, back, and right hip. However, we find it significant that there is no medical evidence that the claimant treated with any medical providers from August 2015 through December 2016.

The parties stipulated that the claimant was taken out of work from January 9, 2017 through May 22, 2017 and did not work for the employer from December 31, 2016 through May 22, 2017. Based upon medical records from Dr. Potter, we find the claimant's disability began on January 4, 2017. However, we find no medical evidence that the claimant's disability from January 2017 through May 22, 2017 was related to her industrial injury.

Upon review by the full Commission, the deputy's opinion was affirmed, finding claimant did not prove her current neck problem was related to the August 12, 2015 work accident. The full Commission concluded as follows:

The claimant's testimony was not consistent with the medical evidence. The accident was on August 12, 2015. She reported a neck injury to her employer on that date. However, the claimant did not seek any treatment for her neck for more than a year after the accident. We consider it unlikely that a person with continuing neck complaints would not seek treatment for more than a year. Also, the medical report from December 30, 2016 refers to neck and right shoulder pain for a week. The claimant did not attribute her neck pain to the work accident. This pattern continued in the December 31, 2016 medical report from Mary Immaculate Hospital and the January 4, 2017 evaluation by Dr. Michael Potter. The first reference to a workers' compensation complaint is the January 17, 2017 Patient First report. The treating physician diagnosed contusion of the right shoulder for the work accident. We therefore do not accept the claimant's testimony in contradiction of this evidence.

This appeal follows.

ANALYSIS

On appeal, claimant contends the Commission erred when it failed to consider all of her

medical records, maintaining her attorney failed to introduce certain records she had supplied to

her attorney.[3] She also contends her medical records proved that her injury and resulting loss of

wages and medical expenses were directly connected to her August 12, 2015 workplace injury.

Essentially, claimant challenges the sufficiency of the evidence, contending her testimony was

credible.

As the appellant in this case, the claimant bears the "burden of showing" that the

Commission committed "reversible error." See Burke v. Catawba Hosp., 59 Va. App. 828, 838

(2012). The sole issue before us is causation. Claimant has the burden to prove, by a

preponderance of the evidence, "a causal connection between the work-related incident" and the

injury. Hoffman v. Carter, 50 Va. App. 199, 214 (2007).

In determining whether credible evidence exists to support the Commission's findings of

fact, "the appellate court does not retry the facts, reweigh the preponderance of the evidence, or

make its own determination of the credibility of the witnesses." Pruden v. Plasser Am. Corp., 45

Va. App. 566, 574-75 (2005) (quoting Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894

(1991)). The Commission's determination of causation is a finding of fact. Lee Cty Sch. Bd. v.

Miller, 38 Va. App. 253, 260 (2002). "[U]nlike the Commission, the reviewing court is not

charged with determining anew whether the employer's evidence of causation should be

accorded sufficient weight to constitute a preponderance of the evidence on that issue." Bass v.

---

[3] We cannot consider medical records not introduced before the Commission. "[A]n appellate court's review of the case is limited to the record on appeal." Karr v. Va Dept. of Envtl Quality, 66 Va. App. 507, 520 (2016) (quoting Wilkins v. Commonwealth, 64 Va. App. 711, 717 (2015)).

City of Richmond Police Dep't, 258 Va. 103, 115 (1999). "Causation is usually proven by medical evidence." Clinch Valley Med. Ctr v. Hayes, 34 Va. App. 183, 192 (2000).

While claimant apparently attributed her injuries to the workplace accident, the Commission rejected her testimony. "In determining the credibility of any witness, the fact finder may accept the parts of a witness' testimony it finds believable and reject other parts as implausible." United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238 (2011). Further, "[a] determination by the Commission upon conflicting facts as to causal relationship is conclusive and binding on appeal, absent fraud, when such finding is supported by competent, credible evidence." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101 (1983).

Upon a close review of the medical records, there is nothing to suggest any causation between claimant's neck injury and the workplace accident. The August 12, 2015 report from Patient First indicated claimant suffered from only multiple contusions after the workplace accident. While complaining of right shoulder pain, claimant did not seek treatment for neck pain until December 2016, more than one year after the workplace accident. Furthermore, at that time, claimant told her medical provider that she had experienced the pain "for a week" prior to December 30, 2016. She did not attribute her neck pain to the August 12, 2015 accident.

Other than the records from August 12, 2015, the date of the workplace injury, the next reference in the medical records to a workers' compensation claim is in the history section of the January 17, 2017 Patient First medical record.[4] On January 17, 2017, the treating physician diagnosed claimant with a contusion of the right shoulder. Moreover, Dr. Carlson, who performed the IME on June 10, 2017, opined that claimant's neck injury was not related to the

---

[4] Claimant told the medical provider that she was initially seen on August 12, 2015 after falling at work.

August 12, 2015 accident, noting, "Since the neck pain was not documented at the initial visit, I do not believe it is related to the August 12, 2015 incident."

The Commission expressly stated in its review opinion that it did not accept claimant's testimony "in contradiction" of the medical evidence in the case. See United Airlines, 58 Va. App. at 238 (the fact finder may reject parts of a witness' testimony it finds implausible). Furthermore, there was sufficient credible evidence in the record to support that claimant did not establish a causal relationship between her accidental injury of August 12, 2015 and her alleged neck pain. See Watkins, 225 Va. at 101 (the Commission's determination upon conflicting facts concerning causal relationship is binding on appeal when supported by credible evidence). Essentially, there is no evidence of causation and the Commission so found. Credible evidence supports the Commission's denial of benefits. We conclude that the Commission did not err.

For these reasons, we affirm the Commission's decision.

Affirmed.