COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and Senior Judge Haley

CITY OF RICHMOND

MEMORANDUM OPINION* BY
v.          Record No. 1207-22-2          JUDGE RANDOLPH A. BEALES
                                          SEPTEMBER 26, 2023

KENNETH W. TUCKER

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Laura K. Drewry, Deputy City Attorney; Richmond City Attorney's
Office, on brief), for appellant. Appellant submitting on brief.

(Kenneth Brent Jones; Corey R. Pollard; Jenkins, Block &
Associates, PC, on brief), for appellee. Appellee submitting on
brief.

The City of Richmond ("the City") challenges the Virginia Workers' Compensation

Commission's ("the Commission") finding that claimant Kenneth Tucker suffered an injury to his

back and spine as a result of an accident that occurred while Tucker was working for the City. The

City then argues that the Commission erred by "giving more weight to Dr. Crowl's opinion and less

weight to Dr. Crane's opinion." The City also contends that the Commission erred by "not giving

deference to the credibility findings of the Deputy Commissioner." Both parties have waived oral

argument on appeal. After reviewing the record and the briefs of the parties, we conclude that the

Commission did not err. Accordingly, we affirm the Commission's judgment.

I. BACKGROUND

On appeal from a decision of the Commission, this Court views the evidence "in the light

most favorable to the party who prevailed before the Commission." *City of Newport News v.*

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

*Kahikina*, 71 Va. App. 536, 539 (2020). Here, Tucker was the prevailing party before the Commission.

The City employed Tucker as a maintenance specialist responsible for maintaining its garbage trucks. On May 12, 2020, Tucker was installing a hydraulic cylinder into the back of a garbage truck. Tucker stood inside the back of the garbage truck and attempted to guide the hydraulic cylinder into position. As he was doing so, the hydraulic cylinder became wedged in the back of the garbage truck. Tucker testified that, while he was trying to unwedge the hydraulic cylinder, the cylinder "swung back because it was on the chain and it hit [him] in the shoulder, threw [him] around and back up against the railing." Tucker stated that his back hit the railing "right across the top of [his] waist."

Tucker felt pain in his shoulder, his back, and throughout his leg. Despite feeling the pain after the impact, Tucker finished installing the hydraulic cylinder and then reported the incident to his supervisor. Tucker stated that he felt "a little sore and stiff" when he woke up the next morning, but he still went to work for the next several days. However, Tucker's lower back pain continued to worsen over the next week or two until "it got to the point where it was hurting all day."

On June 1, 2020, Tucker visited Dr. Peter Crane, a physician who had previously treated Tucker. According to Dr. Crane's notes from June 1, 2020, Tucker told Dr. Crane that "[t]he pain effects [sic] the lower back, both buttocks and radiates into the posterior thighs and posterior lateral calves." Tucker also "reported numbness in the big toe and in the soles of both feet." In addition, Tucker "reported pain in the right shoulder." Dr. Crane noted that Tucker "currently rates his pain, 10/10." Dr. Crane referred Tucker to an orthopedic specialist for his right shoulder pain and then Dr. Crane ordered an MRI of his lumbar spine.

On June 8, 2020, Dr. Joseph Andriano examined Tucker's shoulder and lower back. After examining Tucker, Dr. Andriano wrote, "I cannot believe he [Tucker] was able to work this whole

time in this state." Dr. Andriano ordered an MRI of Tucker's lumbar spine. Tucker did not return to work after his appointment with Dr. Andriano.

Tucker then completed the MRI of his lumbar spine on June 11, 2020. The MRI showed that Tucker had degenerative disc disease, disc herniation, arthritis, and severe central spinal stenosis in his lower back. Dr. Andriano subsequently recommended that Tucker undergo a lumbar decompression, and Dr. Andriano then referred Tucker to Dr. Adam Crowl for surgery.

On July 13, 2020, Tucker met with Dr. Crowl. Dr. Crowl reviewed the results of the June 11, 2020 MRI, and he found that Tucker had "severe central stenosis . . . as well as neural foraminal stenosis." Dr. Crowl then scheduled Tucker to undergo surgery on September 15, 2020. Tucker returned to work on July 20, 2020, and he continued to work until his spinal surgery on September 15, 2020. Tucker subsequently returned to regular duty work on December 21, 2020.

Tucker filed a claim for benefits with the Commission seeking a lifetime medical award for injuries to his back and spine as a result of the May 12, 2020 accident, as well as temporary total disability benefits from September 15, 2020 to December 20, 2020.[1] The City opposed the claim and contended that Tucker's back and spine issues pre-existed the accident. The City further argued that Tucker was not entitled to temporary total disability benefits from September 15, 2020 to December 20, 2020, because that period of disability related to his pre-existing conditions.

The case proceeded to a hearing before the deputy commissioner on October 28, 2021. Tucker's prior medical history was entered into evidence before the deputy commissioner. The medical records show that Tucker had an MRI taken of his lumbar spine in 2016. The 2016 MRI showed "multilevel degenerative disc disease," "multilevel borderline mild spinal canal stenosis,"

---

[1] Tucker also sought a lifetime medical award for the injury to his right shoulder and temporary total disability benefits from June 8, 2020 to July 20, 2020. The City stipulated that Tucker injured his right shoulder as a result of the accident and that he was entitled to temporary total disability benefits from June 8, 2020 to July 20, 2020 as related to his right shoulder.

and "mild left neuroforaminal narrowing." After the 2016 MRI, Tucker met with Dr. Crane at least once a year to monitor his lower back pain. During an October 22, 2019 appointment with Dr. Crane (the final appointment before the May 12, 2020 incident), Tucker reported that he "had stiff, achy pain in his lower back generally first thing in the morning," but Tucker "denied having any pain radiating down his legs." Dr. Crane noted that, on October 22, 2019, Tucker "currently rates his pain 0/10." Tucker also testified that his previous back problems had been resolved before May 2020. In addition, Tucker testified that he started having "spasms running down my leg" after the May 12, 2020 incident and that he never experienced these leg spasms with his previous back problem.

Tucker also introduced medical records for the treatment that he received after the May 12, 2020 incident. Notably, these records included a questionnaire completed by Dr. Crowl where Dr. Crowl agreed that Tucker had suffered an injury to his back because of the May 12, 2020 incident. In addition, Dr. Crowl also agreed that "the injury in the May 2020 work-related incident contributed to (aggravated, accelerated, exacerbated, worsened, or flared up) [Tucker's] pre-existing lumbar spine degenerative disc disease." Dr. Crowl wrote that his opinions were based on "intake notes from Dr. Andriano," Tucker's reports of "[r]ight shoulder pain" and "tingling in his . . . leg," and Dr. Andriano's physical exam showing that Tucker "had severe loss of function due to pain in his back."

The City introduced a questionnaire completed by Dr. Crane. According to Dr. Crane's questionnaire responses, Dr. Crane found that Tucker's 2020 MRI results differed from his previous MRI results. However, Dr. Crane checked a line labeled "No" to the question that asked, "Do these results show any physical/structural change(s) to his lumbar spine that weren't present on MRIs done prior to the incident of May 12, 2020?" Dr. Crane also checked "No" for the question that asked, "In your professional opinion, did the accident of May 12, 2020 cause any physical or

structural changes to the condition of Mr. Tucker's low back?"  In addition, Isaiah Manson, Tucker's supervisor in May 2020, testified that he wrote down that Tucker only reported a shoulder injury as a result of the May 12, 2020 incident.

The deputy commissioner denied Tucker's claim for benefits with respect to his back and spine.  The deputy commissioner reasoned that "we are not persuaded that we can rely upon [Tucker's] testimony as to the alleged change in his condition contemporaneous with the accident, particularly given that . . . Mr. Manson did not document having had such reported to him as resulting from the injury."  Tucker then appealed to the full Commission, which reversed the deputy commissioner's decision and found that Tucker "sustained a compensable injury by accident."  The Commission found that Tucker reported new symptoms after the May 12, 2020 accident that did not appear in the pre-existing medical records.  In addition, the Commission relied on Dr. Crowl's assessment of Tucker because Dr. Crowl had reviewed the 2020 MRI of Tucker's lumbar spine, Dr. Crowl performed Tucker's surgery, and then Dr. Crowl "opined that the work accident accelerated and aggravated the claimant's underlying condition."  The Commission then explained, "Unlike the Deputy Commissioner, we give little weight to Dr. Crane's questionnaire responses stating, yes, there were changes between the two MRIs but no, there was no structural change from the accident, as Dr. Crane offers no explanation for his opinion."  The Commission awarded Tucker his requested medical and temporary total disability benefits.  The City now appeals the award.

## II.  ANALYSIS

On appeal, the City argues that "[t]he Virginia Workers' Compensation Commission erred, as a matter of fact and law, in holding the claimant sustained a sudden mechanical or structural change to his back and spine and the resulting disability."  The City also argues that the Commission erred "in giving more weight to Dr. Crowl's opinion and less weight to Dr. Crane's

opinion." In addition, the City argues that the Commission erred "in not giving deference to the credibility findings of the Deputy Commissioner."

In order for an injury to be compensable under the Workers' Compensation Act, "a claimant must prove that the *cause* of his injury was an *identifiable incident or sudden precipitating event* and that it resulted in an *obvious sudden mechanical or structural change in the body*." *City of Charlottesville v. Sclafani*, 300 Va. 212, 221 (2021) (quoting *Morris v. Morris*, 238 Va. 578, 589 (1989)). "The 'structural or mechanical change' *is* the injury, when it 'produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.'" *Alexandria City Pub. Schs. v. Handel*, 299 Va. 191, 197 (2020) (quoting *Snead v. Harbaugh*, 241 Va. 524, 528 (1991)).

"The [C]ommission's determination regarding causation is a finding of fact." *Kahikina*, 71 Va. App. at 545 (alteration in original) (quoting *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 26 (2005)). "Decisions of the [C]ommission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence." *Id.* (alteration in original) (quoting *United Airlines v. Hayes*, 58 Va. App. 220, 238 (2011)). "In determining whether credible evidence exists to support the [C]ommission's findings of fact, 'the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" *Id.* (alterations in original) (quoting *Marshall*, 47 Va. App. at 26-27). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2005) (*en banc*) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)) (internal citations omitted). Where medical opinions conflict, "the [C]ommission [i]s

free to decide which evidence [i]s more credible and should be weighed more heavily." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 624 (2002).

In this case, there is credible evidence in the record that supports the Commission's finding that Tucker sustained a compensable injury to his back and spine as a result of the May 12, 2020 accident. Tucker testified that his past back-related issues resolved before the accident and that the accident caused new symptoms, specifically Tucker had "spasms running down" his legs. As the Commission observed, Dr. Crowl reviewed the 2020 MRI of Tucker's lumbar spine, Dr. Crowl performed surgery on Tucker, and Dr. Crowl then opined that the accident accelerated and aggravated his pre-existing lumbar spine degenerative disc disease. In addition, Dr. Crane opined that the results of the 2020 MRI of Tucker's lumbar spine differed from the results of a previous MRI of Tucker's lumbar spine from 2016. Tucker's testimony regarding his symptoms before and after the accident, Dr. Crowl's extensive involvement in Tucker's medical treatment, Dr. Crowl's medical opinions on Tucker's lower back, and Dr. Crane's admission that Tucker's 2020 MRI differed from his previous MRI in 2016 all constitute credible evidence in the record that support the Commission's finding that Tucker sustained compensable injuries to his back and spine because of the accident.[2] Consequently, we cannot say that the Commission erred in finding that Tucker suffered a lower back injury as a result of the May 12, 2020 accident. *See Kahikina*, 71 Va. App. at 545.

Furthermore, the Commission did not err by "not giving deference to the credibility findings of the Deputy Commissioner." The City argues, "Because there is no credible reason or articulated

---

[2] The City separately argues that the Commission should have given greater weight to Dr. Crane's opinion instead of Dr. Crowl's opinion because Dr. Crane had reviewed both of Tucker's MRIs. This Court, however, does not "reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." *Kahikina*, 71 Va. App. at 545 (alteration in original) (quoting *Marshall*, 47 Va. App. at 26-27). Consequently, we cannot say that the Commission erred by attributing greater weight to Dr. Crowl's opinion than to Dr. Crane's opinion.

reason to support the Commission's finding, their finding should be reversed." However, "if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy." *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 383 (1987). "Absent a specific, recorded observation regarding the behavior, demeanor or appearance of" a witness at a hearing before a deputy commissioner, "the [C]ommission had no duty to explain its reasons for finding claimant more credible than" another witness. *Bullion Hollow Enters. v. Lane*, 14 Va. App. 725, 729 (1992). Here, the deputy commissioner specifically wrote that "we are not persuaded that we can rely upon [Tucker's] testimony as to the alleged change in his condition contemporaneous with the accident, particularly given that . . . Mr. Manson did not document having had such reported to him as resulting from the injury." Notably, the deputy commissioner did *not* make any findings of credibility regarding Tucker's or Manson's appearance or demeanor as either man testified. Given that the deputy commissioner's credibility findings were based solely on the substance of Tucker's testimony and the substance of Manson's testimony, as opposed to basing her credibility findings on Tucker's and Manson's demeanor or appearance as they testified, the Commission was not required to articulate a reason for reversing the deputy commissioner's credibility determinations. Consequently, we cannot say that the Commission erred by not deferring to the deputy commissioner's credibility findings.

## III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the decision of the Workers' Compensation Commission.

*Affirmed*.